Harold A. VANDER MALLE, et al.,
Plaintiffs-Appellees,

v.

Gordon M. AMBACH, individually and in his official capacity as Commissioner of Education of the State of New York, et al., Defendants-Appellants,

and

Frank Macchiarola, individually and in his official capacity as Chancellor of the Board of Education of the City of New York, et al., Defendants.

No. 691, Docket 81–7801.

United States Court of Appeals,
Second Circuit.

Argued Jan. 11, 1982.

Decided March 4, 1982.

---

Stanley A. Camhi, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., George D. Zuckerman, Asst. Sol. Gen., Amy Juviler, Asst. Atty. Gen., New York City, on the brief), for defendants-appellants.

Arthur D. Zinberg, New York City, for plaintiffs-appellees.

Before OAKES, NEWMAN, and WINTER, Circuit Judges.

NEWMAN, Circuit Judge:

The New York State defendants ("the State")[1] appeal from an order of the District Court for the Southern District of New York (Robert J. Ward, *Judge*) filed September 11, 1981, preliminarily enjoining them to maintain Bruce Vander Malle, an emotionally disturbed twenty-year-old, at the Institute of Living ("the Institute"), a psychiatric hospital in Hartford, Connecticut, and to pay the Institute's per diem charges to maintain Bruce, estimated at $185 per day, accruing after August 8, 1981.[2] Under the special circumstances of this case, we affirm.

Harold and Phyllis Vander Malle, both individually and as the parents of Bruce Vander Malle, instituted an action against various New York State and City defendants,[3] seeking injunctive and declaratory re-

---

1. Gordon M. Ambach, Commissioner of Education of the State of New York; Louis Grumet, Assistant Commissioner of Education for Children with Handicapping Conditions of the State of New York; Willard A. Genrich, Edward J. Meyer, Kenneth B. Clark, Harold E. Newcomb, Emlyn I. Griffith, Mary Alice Kendall, Jorge L. Batista, Louis E. Yavner, Laura B. Chodos, Martin C. Barell, Louise P. Matteoni, Carlos Carballada, Floyd S. Linton, and Salvador J. Sclafani, members of the Board of Regents of the University of the State of New York.

2. August 8 appears to be the date Bruce would have been discharged if interim payment arrangements had not been made. The Court also ordered the Vander Malles to post a $15,000 security bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

3. The City defendants do not appeal from the order of the District Court.

lief and damages for, among other things,[4] alleged violations of their and Bruce's rights under the Education for All Handicapped Children Act of 1975 ("EHA"), 20 U.S.C. § 1401 *et seq.* (1976 & Supp. ·IV 1980).

Bruce's local committee on the handicapped ("COH") in New York City recommended Bruce's placement at the Institute in 1978, at which time the Institute was on New York's list of approved residential placement facilities for handicapped children. In 1979 the COH recommended continued placement at the Institute. Later in 1979, however, the State removed the Institute from the list of certified out-of-state residential placements, based on a determination that the Institute is a hospital, not a school, and is therefore not appropriate for placement.[5] The Vander Malles do not dispute the decertification decision. However, the Vander Malles cannot afford to pay the Institute's maintenance charges,[6] and, unless the State agrees to pay these charges, Bruce will be discharged from the Institute without an alternative placement.

Unfortunately, it is far from clear what legal issues relevant to the preliminary injunction are in dispute between the parties. The plaintiffs essentially contend that Bruce is a handicapped child and that until he is 21 New York is obliged to provide him with a "free appropriate public education." 20 U.S.C. § 1412(1) (1976). The New York defendants do not expressly dispute this claim. They appear to sidestep its consequences, however, by insisting that what Bruce requires is medical treatment and that the medical treatment he has been

receiving at the Institute goes far beyond the treatment for "diagnostic and evaluation purposes only" that the EHA obliges a state to fund. 20 U.S.C. § 1401(17) (1976). This argument seems to go so far as to suggest that, at the current stage of his illness, Bruce is simply not educable. However, when the plaintiffs ascribe that contention to the state defendants, the state defendants disavow it. Potentially the issue seems to be to determine what expenses the Act requires a state to bear for a child who may well be educable by means of special education provided in a residential setting but who also requires considerable psychiatric treatment for an acute condition that currently makes his education possible only at brief, intermittent periods.

Vexing as that question may be, it is not necessary at this stage to resolve it nor even to assess the plaintiffs' likelihood of prevailing upon their view of a proper interpretation of the Act. This is not a suit in which parents are demanding placement of a child at a preferred institution. The Vander Malles are not challenging the right of the State defendants to remove the Institute from New York's list of approved out-of-state placement facilities. The only placement claim asserted by the plaintiffs is that Bruce should be maintained at the Institute only during the interim necessary to determine an alternative placement that satisfies the requirements of the Act. ·The limited nature of the plaintiffs' claim is reflected in the limited nature of the injunction issued by the District Court. Unlike preliminary injunctions in some handi-

---

**4.** The Vander Malles also claimed violations of their rights under § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 (Supp. III 1979); 42 U.S.C. § 1983 (Supp. III 1979); 42 U.S.C. § 1988 (1976); the Due Process and Equal Protection Clauses of the United States Constitution; N.Y.Const. art. 1, §§ 6, 11 and art. XI, § 1; and N.Y.Educ.Law §§ 4401–4407, 4409 (McKinney 1981 & Supp. 1981–1982).

**5.** Despite the loss of certification, the COH continued to recommend Bruce's placement at the Institute for the 1979–1980 and 1980–1981 school years.

**6.** The State has never paid for Bruce's maintenance at the Institute; even during the first year, when the Institute was an approved residential placement, the State and the Institute were unable to resolve a dispute over the proper rate to be charged. The State has paid for Bruce's tuition for education at the Institute, but, since Bruce has not used the Institute's educational facilities beyond a minor extent, the tuition charges are minimal. The Vander Malles' insurance paid for Bruce's maintenance costs until March 1980, but after the insurance was exhausted, a substantial balance has become due the Institute, which intends to discharge Bruce if some satisfactory payment arrangement is not worked out.

capped children placement cases, it does not require continued placement at a particular institution pending litigation of the child's entitlement to be there. Judge Ward's injunction requires continued placement of Bruce at the Institute only "until an appropriate alternative long term placement is found." Thus the issue on the merits, necessary for assessment at this stage, is only whether the plaintiffs have shown a probability of success (or a fair ground for litigation in view of the balance of hardships) as to whether the State defendants have an interim obligation to continue Bruce at the Institute until a lawful alternative placement is made.

■ The State defendants interpose two threshold objections to the District Court's interim order. First, they contend that since Bruce is over 18 and hence an adult under New York law, N.Y.Civ. Prac.Law and Rules § 105(j) (McKinney Supp. 1981–1982), his parents lack standing to bring this suit. However, the Act accords procedural protections to parents, 20 U.S.C. § 1415(b) (1976), and has been recognized as a "bill of rights for parents." *Stemple v. Board of Education,* 623 F.2d 893, 898 (4th Cir. 1980). Moreover, Bruce has requested in writing that his parents retain the lawyer who filed this suit. We believe the suit is properly maintained both by Bruce and by his parents. The State also contends that the Vander Malles failed to exhaust their administrative remedies, as required by statute, *see* 20 U.S.C. § 1415(e)(2) (1976). It may well be that exhaustion is not required in this case because it would be futile in the traditional sense that there is no possibility of a favorable administrative decision, *see, e.g., Armstrong v. Kline,* 476 F.Supp. 583, 601–02 (E.D.Pa.1979), *remanded on other grounds sub nom. Battle v. Pennsylvania,* 629 F.2d 269 (3d Cir. 1980), *cert. denied,* 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 781 (1981). Though we have required exhaustion to see if the Commissioner would depart from a general rule "in a compelling case," *Riley v. Ambach,* 668 F.2d 635, 642 (2d Cir. 1981), here the Commissioner has considered the precise facts of Bruce's case and declined to pay the Institute even on an interim basis. In any event, exhaustion is not required in this case because its practical effect would be to deny the Vander Malles the precise interim relief they seek, *i.e.,* to have Bruce remain at the Institute while the State finds an alternative placement for him. The sooner the State acts to find an alternative long-term placement for Bruce, the sooner the State will have discharged its obligation under the injunction.

■ With respect to the merits of the narrow issue of the State's financial responsibility for Bruce's interim placement at the Institute, pending an alternative placement, both sides endeavor to draw support from the status quo provision of § 615(e)(3) of the Act, 20 U.S.C. § 1415(e)(3) (1976). This provision assures that during proceedings conducted pursuant to § 1415 the child "shall remain in the then current educational placement." To the parents this means that Bruce remains at the Institute, with the State bearing its responsibility to assure that Bruce's program "must be at no cost to the parents of the child." 45 C.F.R. § 121a.302 (1980). To the State defendants the status quo provision means maintenance of only the financial arrangements existing prior to suit, which in Bruce's case did not include any state payments. We can agree with the State defendants that § 1415(e)(3) does not require a State to undertake payments for continuation of a child's placement that had been selected unilaterally by the parents. *See Monahan v. Nebraska,* 491 F.Supp. 1074 (D.Neb.1980), *aff'd in part and vacated in part,* 645 F.2d 592 (8th Cir. 1981); *Stemple v. Board of Education,* 623 F.2d 893 (4th Cir. 1980); *Zvi D. v. Ambach,* 520 F.Supp. 196 (E.D.N.Y.1981). But Bruce's placement at the Institute was made by the COH, exercising its responsibilities under federal and state law. It selected an institution from a list approved by the State defendants. Once that placement was made, we think the purposes of § 1415(e)(3) are best fulfilled by obliging the State to pay for the placement, at least during the interim that apparently will be required to select an alternative placement.

Even if § 1415(e)(3) does not provide explicit authority for the District Court's interim order, the order is fully sustainable on traditional preliminary injunction considerations. Any abrupt removal of Bruce from the Institute would have sufficiently adverse consequences for the child to satisfy the requirement of irreparable injury. There has also been shown a sufficient likelihood of success that the plaintiffs will prevail on their claim that the State has a responsibility to pay for Bruce's placement at the Institute in the interim until an alternative is found. The State defendants may be entirely correct in concluding that the Institute is primarily a hospital, albeit with an educational component for children, rather than an educational institution appropriate for residential placements pursuant to the Act. And the State no doubt can revise its list of institutions eligible for out-of-state placements to remove any deemed to be inappropriate. But having done so, the State defendants cannot escape their statutory obligations simply by notifying the COH that the Institute is no longer on the State's approved list. Unless a valid determination is made that Bruce is no longer a handicapped child within the meaning of the Act (and no such determination has yet been made), a free appropriate public education at a suitable institution remains the responsibility of the State. *See Kruelle v. New Castle County School District*, 642 F.2d 687 (3d Cir. 1981). If the local COH has failed to make an alternative placement in violation of its obligations to the State, that circumstance does not entitle the State to disclaim its statutory responsibilities, *see* 20 U.S.C. § 1412 (1976), to Bruce and his parents.[7]

Finally, the State defendants contend that Bruce's parents have obstructed determination of an alternative placement by refusing permission for Bruce to be examined at the Institute by a psychiatrist selected by the State defendants. The facts surrounding this allegation are in some dispute, although it appears that at some point the parents did deny such permission, apprehending that the State intended to use the examination as a preliminary step to commitment at a State psychiatric hospital. Without intimating any views on the lawfulness of any subsequent placement that may be proposed by the State defendants, we think it clear that they are entitled to have Bruce examined by a qualified psychiatrist of their choosing. Accordingly, we condition our affirmance of the District Court's order on the willingness of Bruce's parents to permit the requested examination at the Institute.

As thus modified, the preliminary injunction is affirmed.

---

7. We need not decide on this appeal whether the State defendants have claims over against the City defendants.