Thomas M. RETTIG, et al., Plaintiffs-Appellants, Cross-Appellees,

v.

KENT CITY SCHOOL DISTRICT, Defendant-Appellee, Cross-Appellant,

and

Kenneth Cardinal, et al., Defendants-Appellees.

Nos. 81–3586, 81–3595.

United States Court of Appeals, Sixth Circuit.

Argued June 30, 1983.

Decided Nov. 8, 1983.

Rehearing Denied Jan. 3, 1984.

Edward G. Kramer, Floyd J. Miller, Cleveland, Ohio, for plaintiffs-appellants, cross-appellees.

Eva Rettig, pro se.

Dennis M. Whalen (argued), G. Frederick Compton, Jr., Dennis M. Whalen Co., L.P.A., Cuyahoga Falls, Ohio, Gary E. Brown (argued), Asst. Atty. Gen., Columbus, Ohio, for defendant-appellee, cross-appellant.

Edward G. Kramer, Floyd J. Miller, Kramer and Associates Co., L.P.A., Cleveland, Ohio, amicus curiae on behalf of appellants.

Before LIVELY, Chief Judge, KRUPANSKY, Circuit Judge, and FEIKENS, District Judge *.

---

* The Hon. John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation.

KRUPANSKY, Circuit Judge.

This is an appeal and cross-appeal from the final order of the District Court for the Northern District of Ohio in this action involving the education of a handicapped child.

The district court entered extensive findings of fact below and reference is made to that opinion for a full exposition of the background of this controversy. *See, Rettig v. Kent City School District,* 539 F.Supp. 768 (N.D.Ohio 1981). It is sufficient to restate here that Thomas M. Rettig (Thomas) is a severely handicapped teen-age child. Thomas displays symptoms of autism and is also believed to be mentally retarded.

In February of 1978 Thomas' parents requested a due process hearing pursuant to the Education for All Handicapped Children Act of 1975 (EHCA or Act) 20 U.S.C. § 1401 *et seq.,* questioning the quality of the education their son was receiving. A hearing was conducted before a Hearing Officer in accordance with § 1415(b)(2) of the Act. The Hearing Officer decided in favor of the Kent City School District and issued a comprehensive opinion on April 30, 1979. It was affirmed by the State Board of Education.

The initial complaint in this matter was filed in the District Court for the Northern District of Ohio on November 30, 1979. The complaint joined Thomas and his mother as parties plaintiff and named the Kent City School District as defendant. Plaintiffs, in the initial complaint, essentially petitioned for review of the state decision pursuant to 20 U.S.C. § 1415(e)(2),[1] and also asserted violations of the Rehabilitation Act of 1973, 29 U.S.C. § 794. An amended complaint incorporated additional allegations of constitutional infringements under 42 U.S.C. § 1983 and joined, as defendants, the superintendent of the Kent City School District, the director of special education for the district, the State Board of Education of Ohio and the state superintendent of education.

The lower court, subsequent to duly conducted hearings in August of 1980, denied plaintiffs' request for a preliminary injunction. The trial court issued its final order in May of 1981, subsequent to a trial of the case on its merits.

The trial court upheld the administrative Hearing Officer's decision, concluding that: (a) the defendants had provided adequate inservice training for faculty and staff; (b) the defendants had devised and implemented a reasonable educational program for Thomas which would not be modified; (c) a twelve month educational program for Thomas was not required under the Act; and (d) continuous occupational therapy for Thomas was not a requirement of the Act.

The lower court did, however, direct the Kent City School District to provide Thomas with one hour of extracurricular activities each week and further decreed that the State Board of Education amend its rules to conform with federal regulations.[2] The lower court concluded, as a matter of fact, that plaintiffs had failed to prove their constitutional infringements. It also characterized the plaintiffs' claims arising under the Rehabilitation Act as merely restatements of EHCA charges and disposed of those charges by incorporating them into its resolution of the latter. Finally, the lower court declined to award attorney fees.

The plaintiffs appealed the trial court's decision insisting that Thomas was being denied a free appropriate education. The

---

1. 20 U.S.C. § 1415(e)(2) provides that any party aggrieved by the resolution of an administrative hearing under the Act:

   shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records

   of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

2. Federal regulations mandate a final disposition of all appeals from decisions of Hearing Officers within 30 days of issuance thereof. 34 C.F.R. § 300.512 (1982). The State rules permitted a 60-day interval.

Kent City School District cross-appealed from the lower court's order mandating the district to provide Thomas with one hour of extracurricular activities each week. The State revised its regulations in accordance with the lower court's order and did not appeal. *See* O.A.C. § 3301–51–02(6)(12)(f).

Initially, we conclude that the lower court's findings with respect to the constitutional claims are not clearly erroneous and we affirm the court's ruling as to those claims. This Court also agrees that, in this case, the plaintiffs' complaints purportedly arising under the Rehabilitation Act, with one exception, are resolved by the disposition of the EHCA claims. *See* 34 C.F.R. §§ 104.33, 104.36 (1982). Accordingly, this Court is confronted with only those issues joined under the EHCA. In considering the asserted violations of the EHCA the Court is directed to the Supreme Court's recent explication of the Act.

In *Board of Education of the Hendrick Hudson Central School District v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the Supreme Court reviewed the policies, procedures and objectives of the Act. It also specifically identified and delimited a court's obligation in actions instituted pursuant to § 1415(e)(2). The Court stated:

> [A] court's inquiry in suits brought under § 1415(e)(2) is two-fold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

*Id.* at 206, 102 S.Ct. at 3051 (footnotes omitted).

Plaintiffs urge that both inquiries should be answered in the negative. In addressing the procedural requirements of the Act the plaintiffs assert that the State failed to develop adequate programs for inservice training of teachers and support personnel as directed by the EHCA.

The EHCA specifically requires a State participating under the Act to submit a plan incorporating, *inter alia:*

> a description of programs and procedures for (A) the development and implementation of a comprehensive system of personnel development which shall include the inservice training of general and special educational instructional and support personnel, ·. . .

■ The district court found that the defendants had developed and implemented a wide range of inservice training programs which satisfied the requirements of the EHCA. That conclusion is supported by the record.

Plaintiffs have argued, however, that parents should be included within the meaning of "support personnel". and therefore the Kent City School District was obliged to provide inservice training to the parents of Thomas. The legislative history, however, discloses that Congress intended the term "support personnel" to denote professional staff employed by the school system. The Senate Report, in discussing the Act's provision regarding inservice training, stated, in pertinent part:

> High quality educational services for all handicapped children will require a greater number of support personnel, as well as teachers. The supportive services should be provided by trained occupational therapists, speech therapists, psychologists, social workers and other appropriately trained personnel.

S.Rep. No. 94–168, 94th Cong., 1st Sess. 34, *reprinted in* [1975] U.S.Code Cong. & Ad. News, 1425, 1457. Accordingly, plaintiffs' contention that "support personnel" should include parents is unfounded and this Court concludes that defendants provided adequate inservice training under the terms of the EHCA.

■ The plaintiffs have challenged the quality of the educational program developed for Thomas in several respects. In sum, however, the plaintiffs' arguments merely reflect a difference of opinion as to the most effective teaching methods available to advance Thomas' education. Various

experts testified as to an appropriate educational program for Thomas. The courts, however, are not free to choose between competing educational theories and impose that selection upon the school system. As the Supreme Court admonished in *Rowley, supra* at 207, 102 S.Ct. at 3051–52:

> In assuring that the requirements of the Act have been met, courts must be careful to avoid imposing their view of preferable educational methods upon the States. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child. The Act expressly charges States with the responsibility of "acquiring and disseminating to teachers and administrators of programs for handicapped children significant information derived from educational research, demonstration, and similar projects, and [of] adopting, where appropriate, promising educational practices and materials." § 1413(a)(3). In the face of such a clear statutory directive, it seems highly unlikely that Congress intended courts to overturn a State's choice of appropriate educational theories in a proceeding conducted pursuant to § 1415(e)(2).
>
> We previously have cautioned that courts lack the "specialized knowledge and experience" necessary to resolve "persistent and difficult questions of educational policy." *San Antonio School District v. Rodriguez,* 411 U.S. 1, 42 [93 S.Ct. 1278, 1301, 36 L.Ed.2d 16] (1973). We think that Congress shared that view when it passed the Act. As already demonstrated, Congress' intention was not

that the Act displace the primacy of States in the field of education, but that States receive funds to assist them in extending their educational systems to the handicapped. Therefore, once a court determines that the requirements of the Act have been met, questions of methodolog. are for resolution by the States. (footnotes omitted). This Court is of the opinion, therefore, that the lower court was correct in refusing to interfere with the State's implementation of its educational program as it related to Thomas. To the extent the plaintiffs' requested the trial court to order the school district to include specific programs within Thomas' curriculum—for example, summer classes and continuous occupational therapy—this Court affirms the district court's denial of such relief inasmuch as the programs were not necessary to permit Thomas to benefit from his instruction.[3]

■ The trial court ruled in favor of the plaintiffs in addressing the issue of Thomas' extracurricular activities. In granting this relief, the trial court relied on the following administrative regulation promulgated under the Act:

> § 300.306   Non-academic services.
>
> (a) Each public agency shall take steps to provide nonacademic and extracurricular services and activities in such manner as is necessary to afford handicapped children an equal opportunity for participation in those services and activities.

34 C.F.R. § 300.306 (1982).[4] The regulation apparently adopts a standard designed to ensure that handicapped children are exposed to extracurricular activities on an equal basis with non-handicapped children.

In *Rowley,* however, the Supreme Court specifically rejected a construction of the

---

**3.** The lower court also ordered the School District to conduct a multi-factored evaluation of Thomas. The School District, in fact, had attempted to perform such an evaluation but his parents objected, charging that the basis of norm-referenced or standardized testing was inappropriate for autistic children. The evidence disclosed however that such testing was an. important component of an overall evaluation. It was, therefore, reasonable to require the parents of Thomas, as a condition to receiving benefits under the Act, to permit the school

district to perform an evaluation of Thomas. *See, Vander Malle v. Ambach,* 673 F.2d 49 (2nd Cir.1982).

**4.** The regulation was initially promulgated by the Secretary of Health, Education and Welfare and appeared at 45 C.F.R. § 1210.306. However, the functions of the Secretary of Health, Education and Welfare with respect to the Act were transferred to the Secretary of Education. Pub.L. No. 96–88 § 601, 93 Stat. 696. The regulation in issue, along with scores of others,

EHCA which required "that States maximize the potential of handicapped children 'commensurate with the opportunity provided to other children.'" *Rowley, supra* at 189, 102 S.Ct. at 3042, *quoting,* 483 F.Supp. 528 at 534.

The regulation and the lower court's opinion antedated the Supreme Court's opinion in *Rowley.* This Court therefore deems it appropriate to remand this issue to the district court for further consideration in light of the pronouncements in *Rowley.*[5]

In accordance with this opinion, the judgment below is AFFIRMED in all respects except that portion requiring the school district to provide extracurricular activities to Thomas which is VACATED and REMANDED for further consideration.[6] Each party shall pay its own costs.

was thereafter transferred to Title 34 and redesignated. 45 Fed.Reg. 77368 (1980).

**5.** This last issue is the exception previously alluded to wherein application of the Rehabilitation Act could provide a resolution different from that achieved by application of the EHCA. *See* 34 C.F.R. § 104.37 (1982). The lower court is free to address this issue on remand.

**6.** *Amicus curiae* has briefed the issue of attorney fees. In light of the remand, the attorney fee issue is not ripe for final resolution.