Wesley **ANDRESS,**

v.

**CLEVELAND ISD, et al.**

No. 1:92CV510.

United States District Court, E.D. Texas, Beaumont Division.

Sept. 21, 1993.

Michael P. O'Dell, O'Dell & Paris, Houston, TX, for plaintiff.

Robert L. Ivey, Vinson & Elkins, David Feldman, Feldman & Associates, Houston, TX, for Cleveland Independent School Dist.

Omar V. Guerrero, Amy R. Castaneda, Asst. Attys. Gen., General Litigation Div., Austin, TX, for Cent. Educ. Agency, and Commissioner of Educ.

### MEMORANDUM AND ORDER

JOE J. FISHER, District Judge.

This is an action pursuant to the Individuals with Disabilities Education Act ("IDEA") alleging that the school district failed to provide plaintiff a free appropriate public education ("FAPE"). Defendant Cleveland ISD ("ISD") filed a third party claim against the Texas Central Education Authority ("CEA") for contribution. The CEA and the ISD have both filed Motions for Summary Judgment. The Court heard oral argument on these motions on September 15, 1993.

The facts of this case are rather unusual, and it appears to be a case of first impression in this circuit. The Summary Judgment Motions filed by Defendant and Third Party Defendant raise three novel issues concerning Texas' implementation of IDEA. The first of these issues raises the question of whether a learning disabled child may be required to undergo a reevaluation to be eligible for special education, when such an examination may be a serious threat to his mental health. The second issue relates to whether a school district may agree to permit a third party evaluation, and the third deals with the 45 day decision requirement encoded in § 504.

The facts in this case, viewed in the light most favorable to Plaintiff, the non-movant party, are as follows: Plaintiff was enrolled in the ISD from 1982 until 1988. Plaintiff was evaluated in 1982 and again in March of 1985 and both times diagnosed as learning disabled, speech impaired and emotionally impaired. During the period of enrollment plaintiff received continuous special education services related to his handicapped condition.

On April 23, 1987 plaintiff was admitted to a psychiatric hospital after suffering severe emotional shock and distress as the result of a hazing incident involving certain fellow students. During this hospitalization plaintiff underwent a complete psychological evaluation conducted by Barbara Hibner, M.D., a child psychiatrist. Plaintiff was diagnosed as suffering from Gerstmann Syndrome, a condition which manifests itself through pronounced problems with social competency and indicates a high risk of developing psychopathology. Dr. Hibner determined that plaintiff's level of anxiety reached panic proportions whenever he was subjected to any type of forced interpersonal interaction. He further determined that this condition was extremely aggravated by a phobia relating to school because of the hazing incident. In light of these findings Dr. Hibner determined that it would be medically unwise for plaintiff to return to a regular school environment, and that he should be provided with homebound instruction. Plaintiff was discharged from the mental hospital on May 22, 1987.

An Admissions, Review and Dismissal ("ARD") Committee meeting was convened August 13, 1987, to discuss Dr. Hibner's evaluation. The ISD determined that Dr. Hibner's diagnosis was correct and agreed to provide plaintiff with homebound academic instruction throughout the 1987–88 school year. Prior to the conclusion of the 1987–88 school year the ISD informed plaintiff's parents that his three year comprehensive educational evaluation, which establishes his eligibility for special education services, expired on March 25, 1988. The ISD sought to subject plaintiff to a comprehensive educational reevaluation. Plaintiff's parents refused to permit the testing pursuant to the medical advice of Dr. Hibner that such testing by school personnel would be too traumatic and could result in plaintiff's suffering a relapse.

Plaintiff alleges that at this point Mr. Garrett, the director of the special education services for Liberty County, agreed to the utilization of third party testing because of the plaintiff's psychiatric condition. Plaintiff further alleges that defendant was allowed to perform additional evaluations and that all objections to the third party evaluations were resolved. Defendant alleges that although it agreed to the third party evaluations it informed plaintiff's parents that these could not be accepted as a substitute for the required reevaluation, and that without the comprehensive reevaluation plaintiff was not eligible for special education.

Rather than subject plaintiff to the risk ascribed by Dr. Hibner to the evaluation the ISD sought to perform, Plaintiff's parents chose to enroll Plaintiff in Memorial Hall, a private school specializing in providing special education services. Plaintiff's parents continued to attempt to establish Plaintiff's eligibility for public special education services through no less than five private evaluations, but on each occasion the ARD committee determined that the independent assessments failed to meet state criteria. The ARD committee determined that the evaluations were either not written in the proper format or did not contain all the necessary tests. Defendant ISD apparently issued a list of evaluators who could carry out an

acceptable evaluation, but plaintiff allegedly rejected the listed evaluators.

On December 5, 1989, plaintiff's parents requested a due process hearing to determine plaintiff's eligibility for special educational services. Several continuances of the hearing were requested by both parties, and permitted by the hearing officer. Hearings were held with respect to plaintiff's eligibility on December 12, 1990, and January 25, 1991. On April 10, 1991, the hearing officer returned a ruling favoring the ISD, holding that to receive special education services Plaintiff must undergo the reevaluation and that plaintiff could not force the ISD to accept an independent evaluation. Plaintiff brought this action pursuant to IDEA to obtain special education services without undergoing the psychiatric risk his treating physician attributes to the mandated reevaluation. After the hearing plaintiff's counsel, Mr. Michael O'Dell signed a form provided by the hearing officer waiving the 45 day limit.

■ In adjudicating this action the Court is reviewing the underlying administrative decision pursuant to IDEA. In actions under IDEA the Court "shall receive the records of the administrative proceeding, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the Court determines is appropriate." 20 U.S.C. § 1415(e)(2). The amount of deference to be given to a hearing officer's decision is within the sound discretion of the Court. *Gregory K. v. Longview School Dist.,* 811 F.2d 1307, 1311 (9th Cir.1987). The Court, in recognition of the expertise of the administrative agency, must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue. After such consideration, the Court is free to accept or reject the findings in part or in whole. *Town of Burlington v. Dept. of Educ.,* 736 F.2d 773, 792 (1st Cir. 1984), aff'd, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). The trial court must render a "bounded, independent decision— bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of

evidence before the Court." *Burlington,* 736 F.2d at 791.

■ The Court must undertake the above examination while also applying the proper standards for the disposition of a summary judgment motion. Summary judgment is proper when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir.1985). In determining if a legitimate factual issue exists the facts should be looked at in the light most favorable to the non-movant. *Valley Stockyards v. Kinsel,* 369 S.W.2d 19 (Tex.1963). It is the non-movant's duty to prove that genuine issues of fact exist to avoid summary judgment. *James v. Nico Energy Corp.,* 838 F.2d 1365, 1372 (5th Cir.1988).

Applying these standards the Court will examine the issues raised by the ISD and CEA's motions. Plaintiff does not oppose the CEA's motion except as it relates to his § 504 and due process claims, so the CEA's position will not be addressed in relation to the first two issues. The Court will find that as to the IDEA cause of action the CEA is protected by sovereign immunity, because the events in question occurred before the waiver of immunity which occurred in October, 1990.

■ The first issue raised by defendant's motion for summary judgment is whether this action is barred because plaintiff's parents refused to permit the ISD to perform the mandatory three year reevaluation, a condition precedent to eligibility for special education under Texas State law. 34 C.F.R. § 300.532 and 19 Tex.Admin.Code § 89.-233(c) & (d). This case presents an extremely unusual factual situation. Virtually every case reported on this subject dealt with parents disagreeing with an evaluation or contesting the individual plan that resulted from an evaluation. In this unique fact pattern neither party disagrees that the child is handicapped or disputes the course of special education necessary to benefit the child. In fact the child had been evaluated twice under the three year requirements and once while being hospitalized for severe mental trauma

and the parents and school district had always worked together to institute the necessary programs the evaluations prescribed. The problem in this action arose when the psychiatrist who had performed the testing on plaintiff during his 1987 hospitalization determined that he suffered from Gerstmann Syndrome, and that further forced interactions with school personnel of the sort that necessarily must occur during reevaluation would be extremely traumatic to the child and would probably result in a relapse which could require further hospitalization. Diagnosis of this syndrome indicates a high risk of developing psychopathology. The parents, unwilling to disregard Dr. Hibner's warning, refused to permit the reevaluation. Hence the unusual situation where all parties agree that plaintiff needs special education, but statutory requirements and regulations leave him no opportunity to get it without serious risk to his mental health.

Plaintiff argues that the legislative intent behind IDEA, as well as plaintiff's constitutional due process rights require the Court to find an exception to the reevaluation mandate when such evaluation poses a threat to the students mental or physical health. Should the Court determine that such an exception exists in the interests of justice, summary judgment would be inappropriate on this issue as a genuine issue of material fact would exist as to whether plaintiff's mental health was actually at risk, and as to whether an evaluation which would satisfy the stringent C.F.R. requirements could have been safely performed by third parties.

Defendant argues that irregardless of the effect on plaintiff's health and well being the law entitles the school district to have people of their own choosing perform the evaluation before plaintiff is eligible for special education. Defendant cites cases involving parental complaints that their experts were not sufficiently considered during the evaluation, or where a school district sought to test a child whose status under special education standards was in question. *Rettig v. Kent City School Dist.*, 720 F.2d 463 (6th Cir. 1984); *Vander Malle v. Ambach*, 673 F.2d 49 (2nd Cir.1982); *Gregory K. v. Longview School Dist.*, 811 F.2d 1307 (9th Cir.1987).

These cases, which do uphold the evaluation requirement, are not on point as none of them deal with the allegation that further testing will harm the child, but instead deal with parental allegations that such testing is inappropriate in determining their children's needs, *Rettig*, 720 F.2d at 466, or with parents who feared the placement that would result from such testing, *Vander Malle*, 673 F.2d at 51. Defendant further argues that the evaluations as presented could not have satisfied the IDEA requirements and that accepting them, even considering the risk to plaintiff's health, would have threatened the district's right to federal funding.

As this is a case of first impression in this jurisdiction the Court was forced to look to decisions on analogous or related issues to seek out a rationale on which the Court might base its conclusion. The closest cases dealt with the effect of certain individual education plans on the health or well being of the children in question. The Fifth Circuit entertained an action in which a child suffered from a mental and neurological condition which caused the child to suffer sensory overload not unlike the symptoms suffered by plaintiff. *Christopher M. v. Corpus Christi ISD*, 933 F.2d 1285 (5th Cir.1991). In this action the Fifth Circuit held that the proper standard for courts to apply when looking at educational programs under IDEA involves balancing the benefit of the school program against any physical harm to the child. *Id.* at 1290. Although this case dealt with an appropriate individual education program, and not with the testing involved therein, it would appear that the Fifth Circuit determined that the child's interest in not suffering further harm was as important as the school districts interest in setting the program. The Fifth Circuit's holding indicates that a child should not be forced to choose between an appropriate public education and his mental and emotional well being. *Id.* This Court finds that under IDEA the health and welfare of the child should be taken into consideration when evaluations are done as well.

A district court in New Hampshire also placed the medical condition of a child above a school districts rights to determine what

constituted appropriate education for a child. *Valerie J. v. Derry Co-op School Dist.*, 771 F.Supp. 483, 490 (D.N.H.1991). In striking down an IEP which required the student to be medicated the court held that a student's right to a free public education could not be premised on medical conditions. *Id.* This conclusion seems equally applicable to testing requirements which could cause severe mental harm to a student. IDEA is intended to guarantee the rights of handicapped children, not subject them to harm. The overriding purpose of the statute is to ensure each child the benefit of an appropriate public education. 20 U.S.C. § 1412 et seq.; *Christopher*, 933 F.2d at 1289. This Court therefore concludes that considering the risk of harm to the child the reevaluation requirement as applied constitutes a violation to the child's constitutional right to privacy. *Carroll v. Capalbo*, 563 F.Supp. 1053, 1061 (D.R.I.1983) (court raises question that in some cases the forced evaluation may constitute a violation of plaintiff's privacy right, but declines to address the issue in light of the facts of that case).

■ It is clear that absent some threat of harm to the student the school district has an absolute right to its own evaluation of the child. *Rettig*, 720 F.2d at 466; *Vander Malle*, 673 F.2d at 53; *Longview*, 811 F.2d at 1315. The Court can not conclude that the risk of harm to the child does not vary this requirement. Under these facts the Court believes it must hold that an exception exists, even if no other court has previously examined the issue. The Court recognizes that the requirement of reevaluation is necessary to determine the most appropriate course of special education for the child as he or she develops over time, but when this poses a risk to the child's health the threat may in some cases outweigh the benefit.

■ The second issue for the Court's consideration is the effect of an alleged agreement between plaintiff's parents and the ISD to accept the third party evaluation in place of the reevaluation. The law states that school districts may insist upon the evaluation being carried out by qualified professionals satisfactory to the school district or of their own choosing. *Dubois v. Conn. State*

*Bd. of Ed.*, 727 F.2d 44, 48 (2nd Cir.1982); *Vander Malle*, 673 F.2d at 53. If the ISD agreed to accept a particular qualified third party's evaluation then this rule would be satisfied. Plaintiff and defendant both allege that some sort of agreement or compromise on this subject was reached by the parties, but each contends it had a different effect. Plaintiff contends that the agreement was that the ISD would accept the third party testing that had occurred and some additional third party testing in place of the reevaluation. Plaintiff contends that these third party evaluations satisfied the C.F.R. requirements, but defendant refused to accept them.

Defendant contends that the agreement was to carry out extensive third party testing, and that the testing never satisfied the C.F.R. requirements. The Court does sympathize with the school districts concern that accepting evaluations which do not satisfy federal requirements might result in the loss of federal funding, but the parties' contentions have raised genuine issues of material fact as to whether the evaluations did satisfy the technical requirements, which preclude granting a summary judgment on this cause of action.

The defendant ISD and the third party defendant CEA move for summary judgment on the § 504 and due process claims based on the delay in the hearing officer's decision. The defendants argue that plaintiff's requesting two continuances effectively waived the 45 day requirement and estopped plaintiff from bringing an action about the delay. Defendants further contend that plaintiff's attorney signed a legal waiver after the decision was rendered. Plaintiff contends that his request and any other requests that were approved by the hearing officer would toll the requirement, but not waive it completely. Plaintiff argues that all acceptable delays approved by the hearing officer still do not account for the long delay after the hearing itself occurred before the officer rendered a judgment. Plaintiff also disputes that the letter he signed was intended to constitute a legal waiver.

■ IDEA's implementing regulations provide that a final decision shall be reached

by the special education hearing officer "not later than 45 days after the receipt of a request for a hearing." 34 C.F.R. § 300.-512(a)(1). The implementing regulations of § 504 expressly refer to these procedures set out in IDEA. 34 C.F.R. § 104.36. The regulations also provide that a "hearing or reviewing officer may grant specific extensions of time beyond the periods . . . at the request of either party." 34 C.F.R. § 300.512(c). Defendant argues that a request for one of these extensions completely waives the 45 day requirement. Defendant also cites an excerpt from the opinion of a District Court from Delaware. *Ahern v. Keene,* 593 F.Supp. 902, 910 (D.Del.1984). This case upheld a signed waiver of the 45 day requirement. Defendants allege that a similar waiver was signed by plaintiff's attorney in this action.

Plaintiff argues that requesting a "specific extension" merely tolls the 45 day requirement for the time of the extension, it does not waive it entirely. This argument is in keeping with the language and purpose of the statute. The "specific extension" language would make no sense at all if any requested extension totally waived the 45 day requirement. This Court will hold that continuances granted under this regulation merely toll the 45 day requirement, they do not act themselves as a waiver.

The facts show that plaintiff requested a hearing December 5, 1989, that the hearings were held December 12, 1990, and January 25, 1991, and that a decision was rendered April 10, 1991. Under these facts over a year passed before the hearing occurred, and then two to four months passed before a decision was forthcoming. The last two months were after the hearings had occurred, so could not possibly have been tolled by a requested continuance. More than 45 days would have passed in this time period alone. Under these facts had plaintiff not signed a waiver he might have been entitled to judgment as a matter of law. The waiver, however, may have been signed.

Defendants have offered into evidence a letter signed by plaintiff's counsel which purports to waive plaintiff's rights under the 45 day requirement. This letter is a form letter composed by the hearing officer. Attached to the letter was a second writing composed by plaintiff's attorney attempting to reserve the rights the letter is purported to waive. Although the letter viewed alone is compelling evidence of a waiver, the additional evidence on the record, when viewed in the light most favorable to the non-movant, indicates the existence of a genuine issue of material fact as to whether plaintiff's rights were waived. This precludes the Court from granting summary judgment on this issue.

Based on the foregoing the Court hereby ORDERS that Defendant Cleveland ISD's Motion for Summary Judgment is DENIED entirely. The Court further ORDERS that Third Party Defendant CEA's Motion for Summary Judgment should be GRANTED as to plaintiff's IDEA claims, but DENIED as to plaintiff's § 504 claim.