**Leslie WISE, Sara Waters, David Wise, Patricia Wise, Lloyd Waters, and Barbara Dinkgrave, Plaintiffs–Appellees,**

v.

**OHIO DEPARTMENT OF EDUCATION (94–4101), Lorain County Board of Mental Retardation and Developmental Disabilities (94–4045), and Avon Local Board of Education (94–4096), Defendants–Appellants,**

**Our Lady of the Wayside Children's Home, Defendant–Appellee.**

Nos. 94–4045, 94–4096 and 94–4101.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 5, 1996.

Decided April 4, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied June 10, 1996.*

---

* Judge Gilmore would grant rehearing for the reasons stated in his dissent.

Susan L. Gragel (argued and briefed), Gold, Rotatori, Schwartz & Gibbons, Cleveland, OH, for Plaintiffs-Appellees.

John P. Ware (argued and briefed), Office of the Attorney General of Ohio, Columbus, OH, for Defendant-Appellant Ohio Department of Education.

John P. Ware, Office of the Attorney General of Ohio, Columbus, OH, Thomas M. Mangan (briefed), Office of the Prosecuting Attorney, Elyria, OH, for Defendants-Appellants Lorain County Board of Mental Retardation and Developmental Disabilities.

John P. Ware, Office of the Attorney General of Ohio, Columbus, OH, for Defendant-Appellant Avon Local Board of Education.

Richard T. Prasse (briefed), Hahn, Loeser & Parks, Cleveland, OH, for Defendant-Appellee Our Lady of the Wayside Children's Home.

David K. Smith, Warhola, O'Toole, Loughman, Alderman & Stumphauzer, Lorain, OH, for Defendant-Appellant Avon Local Board of Education.

Before: KENNEDY and SUHRHEINRICH, Circuit Judges; GILMORE, District Judge.**

KENNEDY, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. GILMORE, D.J. (p. 186), delivered a separate dissenting opinion.

KENNEDY, Circuit Judge.

Defendants, the Ohio Department of Education, Lorain County Board of Mental Retardation and Developmental Disabilities, and Avon Local Board of Education, appeal the District Court's order awarding summary judgment to two sets of nonresident parents seeking to bar Ohio from collecting tuition for special education services provided in Ohio to the parents' children.[1] The parents sought declaratory and injunctive relief on the grounds that OHIO REV.CODE ANN. § 3323.141 (Anderson 1994), which requires the state to seek reimbursement from private residential facilities for the cost of providing special education to children who live in the facility but whose parents reside outside Ohio, conflicts with the Individuals with Disabilities Education Act, 20 U.S.C.A. § 1400 *et seq.* (West 1995) ("IDEA"). The District Court held that Ohio may not irrebuttably presume that children whose parents reside outside Ohio are not Ohio residents; that IDEA requires participating states to provide special education and related services at no cost to parents, even when the parents reside outside the state; and that the parents of Leslie Wise and Sara Waters did not unilaterally change Leslie's and Sara's educational placement when they moved them to a residential facility in Ohio without first requesting a change in the children's place-

---

** The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. After receiving the parents' complaint, the various Ohio defendants filed a cross claim against defendant-appellee Our Lady of the Wayside Children's Home ("OLW") for the cost of educating Leslie Wise and Sara Waters, who were living at OLW. OLW's brief argues that the District Court did not err in enjoining Ohio from billing OLW for special education services provided to the two children, because (1) IDEA requires states to provide special education services to children at no cost to parents, and (2) if Ohio billed OLW, OLW would seek reimbursement from Leslie and Sara's parents. OLW did not participate in oral argument.

ment from their school district in Michigan, because the parents were motivated by a desire to secure high quality residential care for the children rather than simply shopping around for the state offering the best possible special education services. For the following reasons, we reverse.

## I

This dispute concerns the financial responsibility for special education services provided in Ohio to two children, Sara Waters and Leslie Wise, whose parents reside outside Ohio.[2] Sara Waters was born on October 22, 1974 to Lloyd Waters and Barbara Dinkgrave. In a psychological re-evaluation[3] performed on October 7, 1980, in the Northville Public Schools, in Michigan, Sara was diagnosed as being a "cerebral palsied child," who is "mentally impaired and physically impaired." In a section of the October 13, 1980 report summarizing the October 7, 1980 evaluation entitled "Reason for Evaluation," the school psychologist wrote: "Sara was seen for a re-evaluation [of her] special education services based upon the mandate of Federal Act 94–142."[4] The psychologist's report recommended that Sara's then current educational placement at the Taft School in a severely multiply impaired classroom continue:

> It is recommended by the examiner that her classroom placement continue in a severely multiply impaired classroom. This type of classroom atmosphere does appear to be appropriate for Sara and to afford the type of environmental stimulation that she needs at this time. The classroom teacher and staff feel comfortable with Sara as a member of the classroom. . . .

The report also indicates that public school officials had convened Educational Planning and Placement Committee meetings for Sara on October 15, 1975, September of 1976, November 3, 1977, and June 19, 1979. More-

over, when Sara began receiving special education at the Taft school, "an Individual Educational Plan meeting was held and Sara was to be provided occupational therapy services 1–3 times weekly, physical therapy 1 time weekly, and speech 1–5 times weekly."

In June of 1982, after giving birth to a second handicapped child, and concluding that they could not care for Sara at home, Sara's parents placed her in a private residential facility, Our Lady of the Wayside Children's Home ("OLW"), in Avon, Ohio. Sara began receiving special education in September of 1982 at the Murray Ridge School, which is operated by the Lorain County Board of Mental Retardation and Developmental Disabilities. Sara has been living at OLW and receiving special education services at the Murray Ridge School since 1982. Now age 20, Sara functions below the level of a two-year-old child; she cannot speak, nor can she walk, feed, or care for her own hygiene without assistance from others.

Leslie Wise was born on November 15, 1977 to David and Patricia Wise in Lakewood Colorado, where she lived until December of 1978. She then moved to Canton, Michigan, where she lived until December 31, 1981. In a November 18, 1980 psychological re-evaluation[5] performed in the Northville Public Schools, in Michigan, Leslie was classified in the severely multiply impaired range of special education classifications. In a section of the November 18, 1980 report entitled "Reason for Evaluation," the psychologist wrote: "Leslie Wise was referred for reevaluation to update her file and to assess the appropriateness of her current placement." After noting that Leslie "is making progress in her current placement at Taft School in the Severely Multiply Impaired classroom," the report "recommended that this placement be continued with ancillary services in occupational

---

**2.** David and Patricia Wise now reside in Maryland. Lloyd Waters and Barbara Dinkgrave both reside in Michigan.

**3.** The parties did not submit any records from the prior evaluations.

**4.** Pub. Law 94–142, Nov. 29, 1975, 89 Stat. 774, represents Congress's 1975 amendments to the Education of the Handicapped Act, which is now known as the Individuals with Disabilities Education Act. *See* Pub.L. 101–476, § 901(a)(1).

**5.** The parties did not submit any records from the prior evaluations.

therapy, physical therapy, and speech therapy to be continued."

When Leslie's parents determined that they could no longer care for her at home, they moved her to OLW on December 31, 1981. After residing in OLW for three years, OLW, the Avon Local Board of Education ("ABLE"), and the Lorain County Board of Mental Retardation and Developmental Disabilities ("LMRDD") developed an Individual Education Placement ("IEP") recommending that Leslie receive special education services at the Murray Ridge School, which is operated by LMRDD. Leslie has been living at OLW since 1982 and has been receiving special education at the Murray Ridge School since 1985. Now age 17, Leslie is profoundly retarded and functions at or below the level of a one-year-old infant; she cannot speak, and she is unable to walk, eat, or use the toilet without aid from others.

Leslie and Sara attended the Murray Ridge School without charge from the time they were admitted until the fall of 1989. At that time, ABLE billed OLW for the cost of Leslie and Sara's special education. At present, ABLE has billed OLW approximately $90,000 for special education services provided to Leslie and Sara for the 1989–90, 1990–91, and 1991–92 school years. In response, OLW informed Leslie's and Sara's parents that they were responsible for any tuition payments it was required to pay Ohio.[6]

Leslie's and Sara's parents brought suit in federal court seeking a declaration that the statute under which Ohio sought to collect tuition from OLW, Ohio Rev.Code Ann. § 3323.141, was pre-empted by IDEA; the parents also sought to enjoin Ohio from attempting to bill OLW for the special education services already provided. After a lengthy discovery period, the parties submitted cross motions for summary judgment.

■ The District Court adopted a magistrate judge's finding that IDEA prevented Ohio from collecting tuition payments for special education services, even when the parents of children receiving such services reside outside Ohio. In granting the parents'

summary judgment motion, the District Court held that Ohio cannot irrebuttably presume that a child is a non-resident when her parents or legal guardians have never resided in Ohio; that because IDEA requires participating states to provide special education services at no cost to parents, Ohio could not instead bill OLW because OLW would ultimately seek reimbursement from the parents; and that the parents did not unilaterally place the children in OLW without following established procedures for seeking a change in the children's placement from the school district in Michigan. We review the District Court's conclusions de novo. City Management Corp. v. United States Chem. Co., Inc. 43 F.3d 244, 250 (6th Cir.1994).

## II

IDEA provides states federal funds to help defray the costs of educating children with disabilities. 20 U.S.C.A. § 1411. To receive federal funds under IDEA, states must abide by a host of regulations governing the provision of educational services. States are required to identify, locate, and evaluate "all children residing in the State who are disabled ... and who are in need of special education and related services...." 20 U.S.C.A. § 1412(2)(C). States must provide "a free appropriate public education ... for all children with disabilities ... within the State...." 20 U.S.C.A. § 1412(2)(B).

IDEA defines a "free appropriate public education" as special education and related services that——

(A) have been provided at public expense, under public supervision and direction, and without charge,

(B) meet the standards of the State educational agency,

(C) include an appropriate preschool, elementary, or secondary school education in the State involved, and

(D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

---

6. Leslie's and Sara's parents agree that they are ultimately liable to OLW if Ohio is able to bill

OLW for the special education services it provided to Leslie and Sara.

20 U.S.C.A. § 1401(a)(18). IDEA requires local educational agencies to develop individual educational placements (IEPs) for children under which children receive free appropriate special education and related services.

■ Parents who are dissatisfied with their child's educational placement are entitled to contest the local education agency's (LEA) actions in a due process hearing. During the course of these proceedings, parents and schools are required to continue the then current educational placement of the child as set forth in the current IEP. *See* 20 U.S.C.A. § 1415(e)(3)(A). Parents who neglect to follow the grievance procedures set forth in 20 U.S.C.A. § 1415 may render their children ineligible for free appropriate public education. *Florence County Sch. Dist. Four v. Carter,* —— U.S. ——, ——, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993), citing *School Comm. of Burlington, Mass. v. Department of Ed. of Mass.,* 471 U.S. 359, 373–74, 105 S.Ct. 1996, 2004–05, 85 L.Ed.2d 385 (1985).

### III

The parents offer several arguments in support of the District Court's order. First, they claim that because IDEA requires participating states to provide special education services to all children within the state, Ohio may not bill OLW for providing special education to two children, Leslie and Sara, who are within the state. Second, they claim that moving the children to OLW, in Ohio, did not constitute a unilateral change in the children's educational placement because their motivation for the change was only to secure a good home for the children, not to obtain better special education services. Third, they claim that OHIO REV.CODE § 3323.141 is invalid because it irrebuttably presumes that children living in Ohio whose parents reside outside Ohio and have never resided in Ohio but intend their children to live permanently in Ohio are not residents.

### A

The parents first argue that IDEA creates a broad duty on participating states to provide free special education services to all children in the state. Since Leslie and Sara are in Ohio, and, indeed, have been in the State for over thirteen years, the parents argue, Ohio must provide them free special education. Moreover, they claim Ohio may not bill OLW for services it is required to provide at no cost. IDEA does require states to provide free public education to children within the state. Nevertheless, Congress defined the scope of "within the state" to place financial responsibility for children's special education on the local education agency ("LEA") in which the parents reside.

■ IDEA contemplates that parents send their children to the LEA in which the parents reside. Although IDEA does not define residency, *see* 20 U.S.C.A. § 1401 (definitions section), other language in IDEA places ultimate financial and supervisory responsibility for a child's special education and related services with the particular LEA in which the parents reside. Congress requires states receiving federal funds under IDEA to provide free special education services to all children "within the state. . . ." Congress defined the scope of "within" as follows:

> The State educational agency shall be responsible for assuring that the requirements of this subchapter are carried out and that all educational programs for children with disabilities *within the State, including all such programs administered by any other State or local agency,* will be under the general supervision of the persons responsible for educational programs for children with disabilities in the State educational agency. . . .

20 U.S.C.A. § 1412(6). Congress defined "within" as including children whose parents reside in the state but who receive services in or from another state. Thus, states' obligation under IDEA to provide a free public education to all children with disabilities "within the state" includes those children who are receiving services in another state but whose parents reside in the state. A child might be placed in another state because, during the course of developing an IEP for the child, the parent's LEA determines that no in-state facility or school could provide appropriate special education and re-

lated services. *See* 20 U.S.C.A. § 1401(a)(18). The LEA that places the child in another state or in a private facility must exercise supervisory authority over the service provider to ensure the child is receiving an appropriate education. *See* 20 U.S.C.A. § 1412(6). The parents' LEA also retains financial responsibility for the cost of the services provided by the other state or facility:

> [States must assure that] children with disabilities in private school and facilities will be provided special education and related services (in conformance with an individualized education program as required by this subchapter) at no cost to their parents or guardian, *if* such children are placed in or referred to such schools or facilities by the State or appropriate local educational agency as the means of carrying out the requirements of this subchapter....

20 U.S.C.A. § 1413(a)(4)(B) (emphasis added). But the parents' LEA bears such financial responsibility only when the child is in the *out-of-state facility or school* because the parents' LEA developed an IEP that placed her there.

██ Here, OHIO REV.CODE ANN. § 3323.141 directs local school districts or county boards of mental retardation and developmental disabilities to charge private homes for the cost of special education provided to children living in the home

> who are not in the legal or permanent custody of an Ohio resident or a government agency in this state and whose parents are not known to have been residents of this state subsequent to [their child's] birth....

OHIO REV.CODE ANN. § 3323.141(A). Private residential facilities are billed for the cost of providing special education to children living

in the facility only when no other state has assumed financial responsibility for the children's special education. A child would be in such a situation only if she were unilaterally placed in Ohio by parents who resided elsewhere. Thus Ohio Rev.Code Ann. § 3323.141 does not conflict with IDEA, for parents generally render their children ineligible for free special education by unilaterally changing their child's educational placement. *Florence County Sch. Dist. Four v. Carter*, —— U.S. ——, ——, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993).

**B**

Having determined that OHIO REV.CODE ANN. § 3323.141 does *not conflict with IDEA* because the Ohio statute only allows the state to bill private facilities for children unilaterally placed in Ohio, we must now determine whether Leslie's and Sara's placement in OLW constituted a unilateral change in their placement.

When parents bring their child to the LEA in which they live, that LEA has a duty to establish an individual educational program for the child. 20 U.S.C.A. § 1414(a)(5). Congress defined an IEP as

> a written statement for each child with a disability developed in any meeting by a representative of the local educational agency or intermediate educational unit who shall be qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities, the teacher, the parents or guardians of such child, and, whenever appropriate, such child....

20 U.S.C.A. § 1401(a)(20). Each IEP must set forth, among other things, the child's current abilities, a description of the services to be provided, and progress goals.[7] *Id.*

---

7. An IEP must contain:
  (A) a statement of the present levels of educational performance of such child,
  (B) a statement of annual goals, including short-term instructional objectives,
  (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs,
  (D) a statement of the needed transition services for students beginning no later than age

16 and annually thereafter (and, when determined appropriate for the individual, beginning at age 14 or younger), including, when appropriate, a statement of the interagency responsibilities or linkages (or both) before the student leaves the school setting,
  (E) the projected date for initiation and anticipated duration of such services, and
  (F) appropriate objective criteria and evaluation procedures and schedules for determining,

Moreover, the LEA must review the IEP at least annually and make any necessary revisions to ensure that the child is receiving an appropriate education. 20 U.S.C.A. 1414(a)(5).

If parents are dissatisfied with their child's educational placement, or the school's refusal to change the child's educational placement, they may challenge it under procedures set forth in 20 U.S.C.A. § 1415. After making a complaint to the LEA, the parents have a right to an impartial due process hearing. 20 U.S.C.A. § 1415(b)(2). If the parents are dissatisfied with the results of the due process hearing, they may appeal to the State LEA and then bring a subsequent suit in federal court, or they may bring suit directly in state or federal court, depending on the appeals process established by the state. 20 U.S.C.A. § 1415(e)(2).

■ However, during the course of any appeals, the parents and the LEA are bound by a stay-put provision:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child *shall* remain in the then current educational placement of such child. . . .

20 U.S.C.A. § 1415(e)(3)(A) (emphasis added). "[P]arents who . . . 'unilaterally change their child's placement during the pendency of review proceedings, without the consent of the state or local school officials, do so at their own financial risk.' " *Florence County Sch. Dist. Four. v. Carter,* —— U.S. ——, ——, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993), quoting *School Comm. of Burlington, Mass. v. Department of Ed. of Mass.,* 471 U.S. 359, 373–74, 105 S.Ct. 1996, 2004, 85 L.Ed.2d 385 (1985). "They are entitled to reimbursement *only* if a federal court concludes both that the public placement violated IDEA, and that the private school placement was proper under the Act." *Florence County,* —— U.S. at ——, 114 S.Ct. at 366.

This is true because IDEA defines "free appropriate public education" as education "provided in conformity with the individual-

ized education program required under section 1414(a)(5) of this title." 20 U.S.C.A. § 1401(a)(18)(D). When parents unilaterally change their child's educational placement by taking her out of her then current placement, the child is not receiving education in "conformity with the" IEP specifically devised for her.

■ In this case, Leslie and Sara were receiving special education services in Michigan in the Taft School's severely multiply impaired classroom. The parents do not claim that they ever made a formal complaint to the LEA about their child's educational placement or that they asked the LEA to place their child in a residential care facility. Instead, both sets of parents took their child out of her then current educational placement and moved her to OLW. As such, Leslie's and Sara's parents unilaterally changed their educational placements when they moved them to OLW, in Ohio. Having unilaterally changed their children's education placement, the parents are not entitled to have their children educated at public expense.

■ The parents make several arguments as to why moving the children did not constitute a unilateral change in the children's educational placement. Each fails. The parents first argue that they were not bound by the stay-put provision, 20 U.S.C.A. § 1415(e)(3)(A), because they never used the formal appeal procedures set forth in § 1415(b)(2) and § 1415(e)(2). Parents may not avoid the requirements of the stay-put provision by simply neglecting to give the school notice of their dissatisfaction with the child's educational placement. The parents had an obligation to give the Michigan LEA an opportunity to provide an appropriate education by bringing any concerns they had to the LEA's attention and, if necessary, seeking an impartial due process hearing. *Ash v. Lake Oswego Sch. Dist. No. 7J,* 766 F.Supp. 852, 864 (D.Or.1991). The parents did not meet this obligation. Instead of giving the Michigan LEA a chance to change the chil-

---

on at least an annual basis, whether instructional objectives are being achieved.

20 U.S.C.A. § 1401(a)(20) (footnote omitted).

dren's educational placements, the parents unilaterally moved the children to OLW.

The parents next argue that they never received proper notice that they had a right to contest their child's educational placement. The parents cite 34 C.F.R. § 300.504(a) for the proposition that IDEA requires LEAs to provide such notice. IDEA does require that LEAs provide parents notice when the LEA refuses to change the child's placement or proposes to change the child's placement. But here, the LEA neither proposed a change, nor refused to make a change requested by the parents, for the parents never made such a request. They simply moved the children to Ohio and to OLW.

The parents also seem to argue that because Ohio provided a free public education for Leslie and Sara for several years, the children's rights to a free education in Ohio have somehow vested. However, such a quasi-estoppel or reliance theory must also fail, for Ohio had a duty to provide special education services to Leslie and Sara even if it believed that Michigan or the parents themselves bore the ultimate financial responsibility for such services. *See* 34 C.F.R. § 104 App. A. n. 23.

■ The parents also argue that their motive in moving the children to OLW, in Ohio, was only to ensure that their children receive appropriate care in a residential facility. On the strength of this admittedly appealing argument, the District Court held that there was no support for Ohio's claim that the parents had unilaterally changed their children's educational placement. Unfortunately, the parents' motive is irrelevant here. Under IDEA, the parents were required to give the Michigan LEA an opportunity to provide appropriate public education by bringing a complaint or request to the LEA and allowing it to respond. If Michigan did not have an appropriate residential facility, but an IEP committee determined that the children would need residential care to receive an appropriate education, Michigan would have had to place the children in a facility outside the state. But, the parents were not entitled unilaterally to place their child in the facility of their choice and expect that their children would receive a free pub-

lic education. Whatever its virtue as social policy, IDEA only requires states to provide children with disabilities an appropriate education, not the very best possible special education services. *See Rettig v. Kent City Sch. Dist.*, 720 F.2d 463, 466–67 (6th Cir. 1983).

### C

Finally, the parents argue that the District Court was correct in finding that Ohio cannot bill OLW for the cost of public education provided to Leslie and Sara because OHIO REV.CODE ANN. § 3323.141 conflicts with IDEA by irrebuttably presuming that the children are nonresidents. Leslie's and Sara's parents argue that because they intend that the children reside permanently in Ohio, the State may not define residency in a way that denies the children free special education services. The District Court agreed, holding that Ohio could not irrebuttably presume that Leslie and Sara were nonresidents because the parents have a bona fide intention that the children remain in Ohio.

■ Whether Ohio may define residency to exclude children like Leslie and Sara is a matter of statutory interpretation, not irrebuttable presumptions, for the latter implicate constitutional rights to due process. Here, the District Court acknowledged that the parents were not raising a constitutional challenge to Ohio's residency requirement, but it still struck down OHIO REV.CODE ANN. § 3323.141 for irrebuttably presuming the children's nonresidence. This holding was in error.

Of course, OHIO REV.CODE ANN. § 3323.141 would be invalid if its definition of residency conflicted with IDEA's. Under Ohio's statute, private residential facilities in Ohio must pay for special education services provided to children "who [are] not in the legal or permanent custody of an Ohio resident or a government agency in this state and whose parents are not known to have been residents of this state subsequent to [their child's] birth...." As written, Ohio's definition of residency does not conflict with IDEA. IDEA recognized that some children will receive special

education services in a state other than the one in which their parents reside. But IDEA contemplates that such placements will be at no cost to parents only when the LEA in which the parents reside places the children in the other state, not when parents unilaterally choose another state.

### IV

For the foregoing reasons, we **REVERSE** the District Court's order granting summary judgment to the plaintiffs-appellees, and **RE-MAND** with instructions to enter summary judgment in favor of defendants-appellants.

GILMORE, District Judge, dissenting. I respectfully dissent from the majority opinion in this case.

It seems to me that the District Court carefully, thoroughly and accurately decided the case in its opinion *Wise v. Ohio Department of Education*, 863 F.Supp. 570 (N.D.Ohio 1994). I adopt the opinion of the District Court as my dissenting opinion here.