**Micah RADCLIFFE, a minor, By and Through his parent and next friend, Kristina COLLINS, and Paul Collins and Kristina Collins, Plaintiffs,**

v.

**SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA, Defendant.**

**No. 99–152–CIV–T–17E.**

United States District Court, M.D. Florida, Tampa Division.

Feb. 16, 1999.

Laura L. Whiteside, Laura L. Whiteside, P.A., Tampa, FL, for Plaintiffs.

Gregory Alan Hearing, Thomas M. Gonzalez Thompson, Sizemore & Gonzalez, P.A., Tampa, FL, Walter Crosby Few, Few & Ayala, P.A., Tampa, FL, for Defendant.

### ORDER ON PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION

KOVACHEVICH, Chief Judge.

This cause comes before this Court on Plaintiffs MICAH RADCLIFFE, KRISTINA COLLINS, and PAUL COLLINS [hereinafter Plaintiffs]' motion for a temporary restraining order and motion for a preliminary injunction, and supporting affidavits and memorandum (Docket Nos. 2–6), filed January 25, 1999; Defendant SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA [hereinafter Defendant]'s response and supporting affidavits (Docket Nos. 9–10), filed January 28,

1999; and Plaintiffs' reply and supporting affidavits (Docket Nos. 12–16), filed February 4, 1999. Plaintiffs seek an injunction pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 *et seq.* requiring Defendant to convene an Individualized Education Plan meeting at 7 p.m. on the Wednesday immediately following the date of this Order. For the following reasons, Plaintiffs' motion must be denied.

## BACKGROUND

### I. The Statutory Framework

The stated purpose of the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 *et seq.* [hereinafter "IDEA"] is

> to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of children with disabilities and their parents or guardians are protected, to assist States and localities to provide for the education of all children with disabilities, and to assess and assure the effectiveness of efforts to educate children with disabilities.

20 U.S.C. § 1400(c). To that end, IDEA provides state and local governments with federal funding amounting to a significant portion of the cost of educating children with disabilities. 20 U.S.C. § 1411. IDEA is not "a simple funding statute," however; rather, it "confers upon disabled students an enforceable substantive right to public education in participating States and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of [IDEA]." *Honig v. Doe*, 484 U.S. 305, 310, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Participating states are required to have "a policy that assures all children with disabilities the right to a free appropriate public education." 20 U.S.C. § 1412(1). "Integral to the concept of an 'appropriate' education is the notion that the services provided must be tailored to serve the individual needs of the child." *Weiss v. School Board of Hillsborough County*, 141 F.3d 990 (11th Cir.1998). Local educational agencies [hereinafter "LEAs"] receiving funds pursuant to IDEA are therefore required to assure that each child with disabilities receives an individualized education program [hereinafter "IEP"]. *See* 20 U.S.C. §§ 1401(18), 1414. The IEP has been described as "the linchpin" of IDEA. *Briere v. Fair Haven Grade Sch. Dist.*, 948 F.Supp. 1242, 1255 (D.Vt.1996); *see also Honig*, 484 U.S. at 311, 108 S.Ct. 592 (describing the IEP as "the centerpiece of the state's education delivery system for disabled children").

In order to develop these IEP's, LEAs must initially evaluate children with disabilities and must reevaluate them at least once every three years. 20 U.S.C. § 1414(a). LEA's must also review each child's IEP "not less than annually to determine whether the annual goals for the child are being achieved." 20 U.S.C. § 1414(d)(4). Pursuant to this requirement, LEAs must hold an IEP meeting at least once every year to revise each child's IEP. 34 C.F.R. § 300.343. These meetings are to include an "IEP team" that includes a representative of the LEA, the child's teachers, the child's parents, and other individuals at the discretion of the parents and LEA. 34 C.F.R. § 300.344. To insure that parents are given the opportunity to participate in the IEP meetings, LEAs are required to provide parents with notice of the meetings and "schedul[e] the meeting at a mutually agreed on time and place." 34 C.F.R. § 300.345.

Any state or local agency receiving federal assistance under IDEA must establish and maintain certain procedural safeguards as well. 20 U.S.C. § 1415(a). Parents must be given the opportunity to contest any matter that relates to the provision of a free appropriate public education for a child with disabilities. 20 U.S.C. § 1415(b). If the parents of a child

with disabilities decide to bring a complaint, they must be given an impartial due process hearing. 20 U.S.C. § 1415(b)(2); 34 C.F.R. § 300.506. The agency must ensure that within forty-five (45) days of a request for a hearing, a final decision is reached. 34 C.F.R. § 300.512(a). If the hearing is conducted by an agency other than the State Educational Agency [hereinafter "SEA"], any aggrieved party has a right to appeal the decision to the SEA. 34 C.F.R. § 300.510(a). The SEA is required to ensure that on review a final decision is reached within thirty (30) days of the request for review. 34 C.F.R. § 300.512(b). Upon completion of the administrative process, "any party aggrieved by the findings and decision ... shall have the right to bring a civil action with respect to the complaint" in either state or federal court which shall "receive the records of the administrative proceedings ... and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2).

Additionally, any SEA receiving funds under IDEA is required to adopt a complaint procedure. 34 C.F.R. § 300.660. Anyone may file a complaint alleging a violation of IDEA. 34 C.F.R. § 300.662. Upon receipt of a complaint, the SEA must conduct any necessary investigation and issue a written final decision within sixty (60) days. 34 C.F.R. § 300.661(a). The 60-day deadline may be extended only under "exceptional circumstances." 34 C.F.R. § 300.661(b).

## II. Facts

Micah Radcliffe is a six-year old student at Mintz Elementary School in Hillsborough County, Florida. He has significant physical and mental handicaps that result from his having been shaken by a babysitter when he was three months old, and is a child with disabilities as defined in 20 U.S.C. § 1401(a)(1)(A). Plaintiffs Kristina and Paul Collins are Micah's mother and stepfather. Defendant receives federal financial assistance made available through IDEA, and is an LEA as defined by 20 U.S.C. § 1401(18).

Micah's last IEP was formulated on December 1, 1997. Defendant began its three-year reevaluation of Micah in fall 1998. The reevaluation included an assessment by a psychologist and a social and developmental history by a social worker. On November 16, 1998, the IEP team met. Mr. Collins took a day off from work to attend. The psychologist and social worker presented findings at the meeting indicating that Micah's current program is not appropriate to his needs. However, a new IEP was not formulated because the psychologist's and the social worker's reports had been submitted to the school district for typing and had not been completed by the time of the meeting. It was agreed that another IEP meeting would be held once the reports were finalized.

However, as of December 17, 1998, the reports had apparently still not been typed. On that date, Mrs. Collins sent a letter to the Defendant asking for the psychologist's and social worker's reports on Micah, requesting an IEP meeting, and stating that she and her husband would be available to meet on Wednesday evenings after 7:00 p.m. Defendant refused to schedule an IEP meeting outside of its ordinary business hours and did not provide the reports. On the morning of January 13, 1999, Mrs. Collins faxed a complaint to the Florida Department of Education [hereinafter "FDOE"], an SEA as defined by 20 U.S.C. § 1401(a)(7), and delivered two copies of the complaint to Micah's school. The complaint requested investigation of Defendant's failure to provide Plaintiffs with the reports or to hold an IEP meeting. The reports were sent home in Micah's book bag that afternoon.

On January 14, 1999, Defendant scheduled an IEP meeting for January 29, 1999, at 11:00 a.m. and mailed notice of the meeting to Plaintiffs. Although Plaintiffs

have resided at the same address for more than two years and prior notices have been sent to Plaintiffs at that address, Defendant sent notice of the scheduled meeting to the wrong address. Defendant sent a second notice of the meeting on January 21, 1999, also to the wrong address. Plaintiffs filed suit on January 25, 1999, seeking an injunction requiring Defendant to hold an IEP meeting on a Wednesday after 7:00 p.m. Although there were several telephone conversations between Mrs. Collins and the principal of Micah's school regarding the scheduling of an IEP for Micah between the day a date for the IEP meeting was set and the date it was scheduled to take place, the principal never informed Mrs. Collins that an IEP meeting had been scheduled. Plaintiffs did not learn that an IEP meeting had been set for January 29, 1999, until they received Defendant's response to the instant motion, on January 29, 1999, after the time scheduled for the meeting.

As of the date of this Order, no IEP meeting has been held and Micah does not have a current IEP. Because the material presented at Micah's IEP meeting is complex and because the Collinses have found that school district officials are not very cooperative, Mr. and Mrs. Collins would like for both of them to attend the IEP meeting that is to be held. However, Mr. Collins works on a linen delivery route, and he cannot take less than a full day off. He works on commission and is not compensated for time he takes off. In the past, Mr. Collins has attended Micah's school meetings and medical appointments during the workday, but has had to take a full day off from work to do so. The Collinses are expecting a baby soon and Mr. Collins is now the sole support of the family, and the family's finances no longer allow him to miss a full day's pay. Defendant refuses to schedule an IEP outside of its regular business hours.

## DISCUSSION

Plaintiffs seek a temporary restraining order or preliminary injunction requiring Defendant to hold an IEP meeting at 7:00 p.m. on the first Wednesday evening after the date this Order is entered. Defendant argues that the motion must be denied because Plaintiffs have failed to exhaust the administrative remedies required by 20 U.S.C. § 1415. Defendant's argument is supported by binding Eleventh Circuit precedent:

> The philosophy of [IDEA] is that plaintiffs are required to utilize the elaborate administrative scheme established by [IDEA] before resorting to the courts to challenge the actions of the local school authorities. Key reasons for requiring the exhaustion of administrative remedies are as follows: 1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of the agency procedures established by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*Association for Retarded Citizens v. Teague*, 830 F.2d 158, 160 (11th Cir.1987) (citations omitted).

■ Plaintiffs concede that the administrative procedures of 20 U.S.C. § 1415 must be exhausted before a party may seek judicial relief under IDEA. Nonetheless, they contend that exhaustion of administrative remedies is not required in this case, because the remedy Plaintiffs seek is not available in administrative proceedings. "[T]he exhaustion of administrative process is not required where resort to those remedies would be futile or inadequate. For example, courts have not required exhaustion of administrative remedies when the administrative procedure is incapable of granting the relief requested." *Association for Retarded Citizens*, 830 F.2d 158 at 160 (citations omitted). Plaintiffs argue that the due process hearing available through 20 U.S.C. § 1415 is inad-

equate to provide the relief requested because the remedy they seek is an immediate IEP meeting. Micah's previous IEP expired December 1, 1998; requiring Plaintiffs to go through the administrative process, they argue, will only cause further delay.

█ Plaintiffs' desire to have a resolution of this matter as quickly as possible is understandable. However, it is not sufficient to obviate the need to exhaust administrative remedies. The time it takes to exhaust administrative remedies will be a concern in every instance in which parents believe that a child with disabilities is not receiving the free appropriate public education guaranteed by IDEA. Nonetheless, Congress required that those seeking judicial review under IDEA first exhaust their administrative remedies. It is not the prerogative of this Court to controvert the express will of Congress.

█ Plaintiffs also argue that administrative remedies are inadequate because the state has not implemented all of the procedural safeguards required by IDEA. They assert that Florida has not given LEAs the authority necessary to ensure that final decisions are reached within the 45–day deadline imposed by 34 C.F.R. § 300.512(a). Plaintiffs further state that Florida has been reprimanded by the United States Department of Education Office of Special Education Programs for chronically failing to meet the 45–day deadlines. "[I]f state administrative bodies persistently fail to render expeditious decisions as to a child's educational placement, district courts have the power under § 1415(e)(2) to assume jurisdiction over the review process on the grounds that exhaustion would be futile or inadequate." *Frutiger v. Hamilton Cent. Sch. Dist.,* 928 F.2d 68, 74 (2d Cir.1991). However, in the case that is before this Court, Plaintiffs have not requested an impartial due process hearing, much less been forced to wait more than 45 days for a final order in one. This Court cannot excuse the failure to exhaust administrative remedies based on

the state's failure to follow the required procedure for an impartial due process hearing, when Plaintiffs have not requested one.

█ The parties are also in disagreement as to what administrative proceedings Plaintiffs are required to exhaust. Defendant asserts that Plaintiffs must await the outcome of the complaint Plaintiffs made to the FDOE pursuant to the state complaint procedure described in 34 C.F.R. §§ 300.660–300.662. Defendant is incorrect. Indeed, "the text of §§ 300.660–300.662, and the various statements made in the Federal Register as they took their present shape, both evince an expectation that invocation of the complaint procedures they establish will be elective, not mandatory." *Jeremy H. v. Mount Lebanon Sch. Dist.,* 95 F.3d 272, 283 (3d Cir.1996).

However, Plaintiffs may elect to proceed with their state complaint as a substitute for the impartial due process hearing required under IDEA if they so choose. The state complaint:

procedure may furnish an appropriate administrative remedy where the only purposes served by exhaustion are to notify the state of local noncompliance and to afford it an opportunity to correct the problem. Whether to require or to accept exhaustion of the [state complaint] procedure as a substitute for exhausting IDEA procedures in challenges to facially invalid policies, however, is a determination which must be made on a case-by-case basis.

*Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298 (9th Cir.1992). In this instance, the purposes of requiring exhaustion would be as well served by the state complaint procedure as by the impartial due process hearing. This case is not factually complex, but presents questions regarding education policy and the allocation of resources that the FDOE seems equally, if not more, suited to resolve than an administrative law judge. It is left to Plaintiffs

to determine whether they wish to pursue the complaint already filed with the FDOE or request an impartial due process hearing.

■ Because Plaintiffs have failed to exhaust the required administrative remedies, this Court is compelled to deny Plaintiffs' motion for a temporary restraining order or preliminary injunction. However, Plaintiffs' failure to exhaust their administrative remedies does not divest this court of subject matter jurisdiction; "exhaustion is a prudential doctrine, not a jurisdictional prerequisite." *Waterman v. Marquette–Alger Intermediate Sch. Dist.,* 739 F.Supp. 361, 366 (W.D.Mich.1990). The Court recognizes that Plaintiffs have demonstrated that Florida has in the past, including in cases before this Court, failed to comply with the procedural safeguards required by IDEA. For that reason, this Court will not dismiss Plaintiffs' complaint, but will administratively close this case until the administrative proceedings are resolved or for a period of fifty (50) days from the date of this order, whichever occurs sooner. Should the state fail to comply with its obligations under IDEA to resolve the required administrative proceedings in a timely fashion, this Court may revisit the issue of whether exhaustion of administrative remedies is futile in this case. The parties are directed to inform the Court of the resolution of any administrative proceedings.

In the interim, the Court would remind both parties that what is at stake here is the welfare of a child, and asks them to consider taking the steps necessary to ensure Micah's wellbeing. The Court notes that the psychologist's report states that the assessment of Micah's psychosocial adjustment indicates significant elevation on the depression scale, and that the psychologist attributes this depression to Micah's frustration with his present curriculum. Federal and Florida law require children with disabilities to remain in their current educational placement during the pendency of proceedings *unless the parents and educational agency agree otherwise.* 20 U.S.C. § 1415(e)(3); Fla.Stat. § 230.23(4)(m)5. If, as seems to be the case on the record before this Court, Micah's current educational placement is not only not providing him with the free appropriate public education to which he is entitled, but actually causing him harm, the parties are encouraged to consider whether Micah's educational placement ought to be changed during the pendency of these proceedings.

The Court also notes that allegations have been made in this case that the reasons Defendant has taken certain of the actions involved here is in retaliation against Plaintiffs for their advocacy on Micah's behalf. This Court has no factual basis for determining whether that is the case, and it will not speculate as to Defendant's motives. However, the Court would remind Defendant that one of the fundamental goals of IDEA is the involvement of the parents of children with disabilities in their children's education. "Congress repeatedly emphasized throughout [IDEA] the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness." *Honig v. Doe,* 484 U.S. 305, 310, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). By accepting funds pursuant to IDEA, Defendant has committed itself to welcoming and encouraging parents' involvement in the education of their children. Defendant is encouraged to ensure that all of its agents and employees understand that obligation, and that those agents and employees understand as well that retaliation against parents for advocacy on behalf of their children is itself a violation of IDEA. Accordingly, it is

**ORDERED** that Plaintiffs MICAH RADCLIFFE, KRISTINA COLLINS, and PAUL COLLINS' motion for a temporary restraining order and motion for a preliminary injunction (Docket No. 2) be **DENIED;** and that this cause of action be **ADMINISTRATIVELY CLOSED** for ei-

ther fifty (50) days from the date of this Order or the issuance of a final order in administrative proceedings on this complaint, whichever occurs first. **FAILURE TO REOPEN THE CASE, TO PURSUE ADMINISTRATIVE REMEDIES WITHIN THE WITHIN THE TIME GIVEN, OR TO SEEK AN EXTENSION OF TIME TO DO THE SAME WILL RESULT IN DISMISSAL OF THE COMPLAINT, WITH PREJUDICE, FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.** Either party may reopen the case upon the stated conditions by submitting a written request to the Court.