**Barbara ENGWILLER, parent of a disabled student, Jacqueline E. ("Jaye"), Plaintiff,**

**v.**

**PINE PLAINS CENTRAL SCHOOL DISTRICT, Commissioner Richard P. Mills, Manager Rita Levay, and The State Education Department, Defendants.**

**No. 00 Civ. 2436(CM).**

United States District Court, S.D. New York.

Aug. 16, 2000.

---

Rosa Lee Charpentier, Family Advocates, Inc., Kingston, NY, for plaintiff.

Lisa S. Rusk, Shaw & Perelson, Highland, NY, for defendant School District.

Judith T. Kramer, Kimberly Ann Dasse, Office of the Attorney General of the State of New York, New York City, for State defendants.

### MEMORANDUM DECISION AND ORDER DISPOSING OF PENDING MOTIONS

McMAHON, District Judge.

Plaintiff Barbara Engwiller brought claims on behalf of her daughter, Jacqueline, under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq.* against the Board of Education for the Pine Plains Central School District ("the School District") and the New York State Education Department ("SED"); and under 42 U.S.C. § 1983 against New York State Education Commissioner Richard P. Mills, in his individual capacity, and New York State Special Education Manager Rita Levay, who is also sued in her individual capacity. Her claims arise out of the failure of an impartial hearing officer ("IHO") to issue a decision on Plaintiff's challenge of Jacqueline's Individualized Education Program ("IEP") for the 1998–99 school year.

On May 31, 2000, the State Defendants moved for dismissal pursuant to Fed. R.Civ.P. 12(b)(6). On June 23, 2000, Plaintiff filed an amended complaint to include claims under the IDEA and the Due Process Clause of the Fourteenth Amendment via 42 U.S.C. § 1983. The School District then brought a 12(b)(6) motion, filed on June 29, 2000, for dismissal of Plaintiff's amended complaint. On July 1, 2000, the State Defendants in turn moved for summary judgment under Fed.R.Civ.P. 56, and have asked this Court to refrain from deciding their motion to dismiss Plaintiff's original complaint.

Defendants' motions are disposed of as follows: (1) the State Defendants' motion for summary judgment is granted as to Plaintiff's claims against Defendants Mills and Levay under 42 U.S.C. § 1983; and denied with respect to Plaintiff's claims against the State; and (2) the School District's motion to dismiss is denied, but a determination on the merits will be deferred for ten days, by which time the SED must provide a decision on Plaintiff's challenge to her daughter's IEP.

## FACTUAL BACKGROUND

### (1) *Statutory Framework*

Congress passed the IDEA to "assure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs," to ensure that the rights of children with disabilities and parents of such children are protected, and to assist states and their agencies in working toward those ends. *See* 20 U.S.C. § 1400(d)(1)–(4). The statute therefore requires that the IEP be reviewed and revised each school year. *See id.* § 1414(d).

Accordingly, the IDEA imposes elaborate procedural requirements to be followed in the event of a disagreement between the parents and the local educational agency with respect to the child's IEP. *See id.* § 1415. These procedures include the opportunity for parents to obtain an independent educational evaluation of the child, *see id.* § 1415(b)(1), and to initiate an impartial due process hearing. *See id.* § 1415(f)(1). States and local educational agencies must comply with these requirements in order to qualify for federal funding. *See id.* §§ 1412, 1413.

With respect to due process hearings, the IDEA permits each state to determine whether it will provide a single-tier or two-tier administrative review process. *See* 20 U.S.C. § 1415(g). New York has opted for the two-tier approach. *See* N.Y.Educ.L. § 4404. Under the New York scheme, a parent who wishes to challenge his or her child's IEP is entitled to a due process hearing conducted by an impartial hearing officer ("IHO") appointed by the local board of education. *See id.* § 4404(1).

The IHO's decision must be rendered no later than 45 days after the receipt by the local board of education of a request for a hearing. *See* 34 C.F.R. § 300.511(a)(1); 8 N.Y.C.R.R. 200.5(i)(4). That deadline may be extended at the request of either the school district or the parent. *See* 34 C.F.R. § 300.511(c); 8 N.Y.C.R.R. 220.5(i)(4)(i). Nonetheless, the brevity of the 45–day requirement indicates Congress's intent that children not be left indefinitely in an administrative limbo while adults maneuver over the aspect of their lives that would, in large measure, dictate their ability to function in a complex world.

A parent dissatisfied with the decision of the IHO and the local educational agency have the right to appeal the IHO's decision to a state review officer ("SRO"). *See* N.Y.Educ.L. § 4402(2). After these administrative remedies have been exhausted, a party may bring an Article 78 proceeding in state court or a federal action under § 1415(i)(2) of the IDEA. *See* 20 U.S.C. § 1415(i)(2)(A); N.Y.Educ.L. § 4404(3).

Where, as in this case, the IHO fails to render a decision within the mandated 45–day period, aggrieved parties may avail themselves of two procedures. First, a parent or school district may file a written complaint with the commissioner pursuant to 8 N.Y.C.R.R. 200.21. Upon receipt of the complaint, the commissioner is required to provide the impartial hearing officer with notice of the complaint and 30 days to respond thereto. 8 N.Y.C.R.R. 200.21(b)(2). If the commissioner finds "good cause" of either misconduct or incompetence on the part of the impartial hearing officer, the commissioner may issue a warning or, in cases where imposition of a more severe penalty "would not be justified," a conditional suspension of certification pending completion of a specified course of training. 8 N.Y.C.R.R. 200.21(b)(4). As the State Defendants concede, the effectiveness of the complaint procedure under 8 N.Y.C.R.R. 200.21 is limited, given that the provision does not enable the commissioner to take any further action should the IHO persist in his or her failure to issue an immediate decision. (*See* State Def.Br. at 7.) There would, therefore, appear to be little point to invoking it.

In the alternative, either a parent or the school district may file an appeal to a state review officer ("SRO"), as provided by New York Education Law § 4404(2) and 8 N.Y.C.R.R. 200.5(j). The filing of a § 310 appeal confers upon the commissioner authority over the local school board. *See* N.Y.Educ.L. § 311(4). The responding party then has 20 days to file a verified answer, *see* 8 N.Y.C.R.R. 275.13(a), and an additional 30 days from service of the answer to file a memorandum of law, *see* 8 N.Y.C.R.R. 276.4(a)—a total of 50 days (almost two precious months) at a time when the decision is already long overdue. After the verified answer is filed, the petitioner has 10 days to submit a verified reply, *see* 8 N.Y.C.R.R. 275.14(a). A reply memorandum of law may be submitted with the prior approval of the commissioner. *See* 8 N.Y.C.R.R. 276.4(a). Once the SRO issues a decision, the Commissioner may issue a formal order requiring the IHO to issue an immediate decision, or, if necessary, remove the delinquent IHO. *See* N.Y.Educ.L. § 4404(1).

## (2) *Jacqueline's 1998–99 IEP and Plaintiff's Due Process Hearing*

The following facts are undisputed except as noted. Plaintiff's daughter, Jacqueline, is 17 years old. She is classified as learning disabled under the IDEA and its corresponding state statute, New York State Education Law Article 89 and its implementing regulations. Jacqueline entered the Pine Plains school system as a kindergarten student in 1987, and has resided in the Pine Plains School District since that date.

Jacqueline has had academic difficulties since kindergarten. She repeated kindergarten for the 1988–89 school year, and following her second year in kindergarten, the School District's Committee on Special Education ("CSE") classified her as learning disabled and entitled to IDEA services. Additionally, at or about that time, the school psychologist evaluated Jacqueline as being of average intelligence but having difficulty retaining letter sounds, formations of letters, numbers and arithmetic concepts.

Jacqueline continued to encounter academic roadblocks in subsequent years. A 1997 independent evaluation of Jacqueline revealed that, while her general intellectual capacity fell within the high end of the "average" range, she had significant deficits in multiple areas, especially primary auditory processing and sustained attention. Dr. Rissenberg further determined that Jacqueline's academic performance was three to five years below her grade placement, and that her reading comprehension was at the third grade level.

The present controversy stems from Plaintiff's dissatisfaction with the IEP that the School District's CSE formulated for

Jacqueline for the 1998–99 school year.[1] On September 18, 1998, Plaintiff objected to the IEP and requested an impartial hearing under the IDEA. Plaintiff further notified the Pine Plains School District of her intent to remove Jacqueline from the school and place her at the nearby Kildonan School, a private institution. In that written notice to the School District, Plaintiff requested tuition reimbursement. The School District received Plaintiff's demand for a hearing on September 23, 1998.

On October 7, 1998, the Board appointed Dee Estelle Alpert to conduct the hearing, which began on November 10, 1998. As reflected in the School District's subsequent Section 310 appeal to the Commissioner, both parties waived the 45–day deadline for issuance of the IHO's decision, agreeing to six hearing dates concluding on August 9, 1999. Additionally, the parties agreed to submit closing briefs on September 3, 1999. Alpert told the parties that she would issue a decision within two weeks after she received those briefs. (*See* School District Verified Section 310 Petition, attached as Exhibit C to School District's Notice of Motion.) This timeline is consistent with Plaintiff's own acknowledgment at oral argument before this Court on June 20, 2000 that she agreed to several extensions of the 45–day requirement, but not to an indefinite extension. Thus, according to the parties' agreed schedule, Alpert should have rendered a decision no later than September 17, 1999. To date, no decision has been issued.

In January 1999, Plaintiff enrolled Jacqueline at Kildonan. Plaintiff has been unable to continue tuition payments to Kildonan, however, and was advised by that school in March 2000 that Jacqueline could not return until her outstanding tuition balance was paid.

Prior to the conclusion of the hearing, the School District had filed a complaint against Alpert under 8 N.Y.C.R.R. 200.21, alleging incompetence and bias based on her use of inappropriate language, smoking on school premises, and badgering of the School District's witnesses. After the due date for Jacqueline's decision, the School District telephoned Alpert's office several times to inquire about the status of the matter. By letter dated November 4, 1999, the School District expanded the scope of its complaint to include Alpert's failure to issue a decision within the agreed time frame. By letter dated January 25, 2000, Levay informed the School District that the SED had admonished Alpert for her misconduct and failure to render a timely decision, and had ordered her to issue a decision immediately. Alpert did not do so.

Six days after the hearing officer's letter of admonition, on January 31, 2000, Plaintiff made her own 200.21 complaint to Levay regarding Alpert's continued inaction. Levay responded by letter dated February 14, 2000, acknowledging receipt of Plaintiff's complaint. She recommended that Plaintiff file a Section 310 appeal to request that the Commissioner issue a formal order that Alpert render a decision, and enclosed with her letter a set of detailed instructions on filing Section 310 appeals. Levay's letter did not indicate that the SED would take further action in connection with Plaintiff's complaint.

On March 8, 2000, the School District sent Levay a letter informing her that Alpert had still failed to issue a decision, and asked the SED to reinitiate its complaint. Levay responded by letter dated March 28, 2000, in which she recommended that the School District file a joint Section 310 appeal with Plaintiff. Again, Levay's letter did not state that the SED

---

1. In her Amended Complaint, Plaintiff describes her dissatisfaction with certain IDEA services provided to Jacqueline in 1989, 1996 and 1997. (*See* Am.Cplt. ¶¶ 10–18.) As the State Defendants correctly point out, any

claims Plaintiff might assert based on those alleged shortcomings are untimely under the applicable four-month statute of limitations. *See Adler v. Educ. Dept. of the State of New York,* 760 F.2d 454, 459 (2d Cir.1985).

would take any further action in the matter.

Meanwhile, on March 31, 2000, Plaintiff filed the instant suit against Defendants.

On April 17, 2000, the School District sent a letter to Plaintiff's counsel inquiring as to whether Plaintiff would be willing to participate in a joint appeal as recommended by Levay. Plaintiff did not respond to that letter, and on April 27, 2000, the School District filed its own Section 310 appeal, which named both Alpert and Plaintiff as respondents.

Alpert did not serve an answer to the School District's Section 310 petition. Plaintiff did file an answer, in which she contended that a parent of a disabled child is not a proper respondent in a Section 310 appeal. In his decision dated June 12, 2000, the Commissioner dismissed the appeal as against Plaintiff on the ground that the School District had not stated a claim or sought relief against her. The Commissioner ordered Alpert to issue a decision on the record within 10 days of his decision—i.e., by June 22, 2000. Alpert did not comply with this order. Therefore, on June 28, 2000, the Commissioner revoked Alpert's IHO certification pursuant to § 4404(1) of the Education Law and 8 N.Y.C.R.R. 220.21. The transcript of Jacqueline's hearing was sent to a new (unidentified) IHO for an immediate decision. Consistent with the history of this case, nothing has happened, though nearly two months have passed.

(3) *The Present Action*

Plaintiff asserts the following claims: (1) violation of the IDEA against the School District for failing to provide Jacqueline with a free and appropriate public education ("FAPE"), by its refusal to include in Jacqueline's IEP the extended school day program and homework tutorial offered by the Kildonan School; (2) violation of Sections 1412(a)(6)(A) and 1415(b) of the IDEA against the SED for failure to ensure that a timely written decision was issued by the IHO, for denying Plaintiff notice of prior and pending complaints about the competence of IHO Alpert, and for failing to ensure that its administrative procedures are in accord with IDEA requirements and forcing parents to initiate an appeals process before receiving a final administrative decision; and (3) violation of 42 U.S.C. § 1983 against individual Defendants Mills and Levay, in their individual capacities, for denial of Jacqueline's and Plaintiff's right to procedural due process under the Fourteenth Amendment by their failure to provide Jacqueline and Plaintiff an impartial review of their complaints stemming from unidentified "decisions" regarding Jacqueline's special education plan, having a policy and practice of permitting administrative delay, inadequately supervising IHOs, and failing to give Plaintiff notice of IHO misconduct (unspecified as to which IHO's misconduct).

Plaintiff seeks the following relief:

(1) a declaratory judgment that the School District denied Jacqueline a free and appropriate public education through its inadequate IEP for 1998–99;

(2) a declaratory judgment that the State Education Department has failed to operate and supervise a viable impartial hearing and state review procedure, and an injunction to prevent the continuation of the State's allegedly inadequate supervisory mechanism;

(3) a declaratory judgment that the SED's due process hearing procedures are defective on a system-wide basis under the IDEA;

(4) a declaratory judgment that the Defendants' failure to ensure a timely decision from the IHO constitutes a violation of the Due Process Clause of the U.S. Constitution;

(5) a declaratory judgment that Plaintiff is exempt from exhaustion of State administrative remedies until the inadequacies of those remedies are redressed;

(6) full tuition reimbursement to Plaintiff for the costs of Jacqueline's place-

ment in the Kildonan School beginning in January 1999 and running through the pendency of this action and an order that her placement be maintained until the School District implements a satisfactory IEP for Jacqueline;

(7) an order that the State Education Department develop and present to the Court a plan for correction of its insufficient review practices and procedures;

(8) an order that the SED develop and present to the Court within 90 days a plan to remedy the above-alleged procedural violations, and entertain input from Plaintiff relevant thereto; and

(9) reasonable attorneys' fees under 20 U.S.C. § 1415(e)(4)(B) and/or 42 U.S.C. § 1988.

The State Defendants have moved for summary judgment dismissing the amended complaint as against them. The School District has moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), but submitted numerous exhibits other than the complaint in support of the motion, as has Plaintiff in opposition. The Court, at its option, may treat such a motion as one for summary judgment. *See* Fed.R.Civ.P. 12(c). The Court elects to do so. This means that the Court may search the (voluminous) record and grant summary judgment to any party who is entitled to relief as a matter of law. *See id.*

For the reasons that follow, the Court grants summary judgment in favor of Plaintiff and against the SED and the School District, on the ground that they have violated her and her daughter's due process rights under the IDEA. The State is ordered to provide Plaintiff with a decision on her objections to Jacqueline's 1998–99 IEP within 10 days of this decision and order, or the Court will entertain an application for contempt. Plaintiff's application for attorneys' fees under the IDEA is also granted as against the SED. The motion by the SED for dismissal on summary judgment on Plaintiff's remaining requests for relief, which pertain to the alleged inadequacy of the SED's adminis-

trative procedures on a system-wide basis, is denied at this time, and Plaintiff is granted 20 days to decide whether to assert those claims on behalf of a class and litigate them fully. Finally, the State's motion for summary judgment as to Plaintiff's claims against the individual defendants under 42 U.S.C. § 1983 is granted.

The School District's motion to dismiss is denied, but consideration of Plaintiff's claim against the School District for the alleged deficiency of Jacqueline's 1998–99 IEP and for tuition reimbursement is deferred in the hope of receiving an administrative decision.

## CONCLUSIONS OF LAW

### Standard for Summary Judgment

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-movant. *See Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505. In making its determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### (1) Exhaustion of Remedies

The State and School District Defendants first argue that this Court lacks subject matter jurisdiction over Plaintiff's claims because she has not exhausted the administrative remedies provided under the New York Education Law. Specifically, Defendants contend that Plaintiff's failure

to bring a § 310 action against the Pine Plains School District after the IHO's failure to render a timely decision precludes her from bringing suit under the IDEA.

Before bringing an action in federal court, a parent aggrieved by procedural violations of the IDEA must first exhaust state administrative remedies. *See Garro v. State of Connecticut,* 23 F.3d 734, 737 (2d Cir.1994) (citing *Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir.1987)). Failure to exhaust deprives a district court of subject matter jurisdiction over the matter. *See Schlude v. Northeast Central Sch. Dist.,* 892 F.Supp. 560, 564 (S.D.N.Y.1995). As courts within this circuit have observed, application of the exhaustion doctrine in the IDEA context "prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes." *See Ajala v. New York City Bd. of Educ.,* No. 97 Civ. 0469, 1997 WL 736699, * 4 (S.D.N.Y. Nov.28, 1997) (citing *Schlude,* 892 F.Supp. at 564).

The exhaustion requirement is not absolute, however. Exhaustion is not required "where it would be futile or the state administrative system would be inadequate." *See Garro,* 23 F.3d at 737. Excessive or pervasive untimeliness in rendering administrative decisions may provide grounds for finding futility. As the Second Circuit observed in *dicta* in *Frutiger v. Hamilton Central Sch. Dist.,* 928 F.2d 68 (2d Cir.1991), futility might exist "if state administrative bodies persistently fail to render expeditious decisions as to a child's educational placement." *See id.* at 74. For example, one court within this circuit found that resort to administrative remedies would be futile where the SRO had failed to render a decision on the plaintiff's appeal some two months after they requested review, well beyond the 30–day time limit under 34 C.F.R. § 300.511(b)(2). *See Sabatini v. Corning–Painted Post Area Sch. Dist.,* 78 F.Supp.2d 138, 141 (W.D.N.Y.1999).

Exhaustion has also been held to be futile where the state administrative agency was acting in violation of the law or lacked the authority to remedy the alleged injury. *See Heldman v. Sobol,* 962 F.2d 148, 159 (2d Cir.1992). Thus, in *Heldman,* the Second Circuit concluded that the plaintiff's IDEA challenge of a provision in the New York Education Law that allowed school boards to select IHOs fell within the futility exception, since the Commissioner of Education had no authority to grant the relief requested—that is, to modify the Education Law or its implementing regulations. *See id.*

Here, Plaintiff contends that, because the Section 310 appeal process permits the SED to shift the burden of ensuring timely IHO decisions to parents, that procedure is inadequate to protect her and her daughter's due process right under the IDEA to a timely IHO ruling. She also alleges that recourse to Section 310 is inadequate on a system-wide basis. Since the Commissioner has no authority to alter a statutory provision, these grievances cannot be redressed through administrative channels. It follows that, under *Heldman,* Plaintiff's claims relating to the adequacy of New York State's enforcement mechanism for ensuring timely adjudication of IEP challenges by Jacqueline and other children cannot be dismissed under the exhaustion doctrine.

Plaintiff's claim against the School District, by contrast, is based on her individual dissatisfaction with Jacqueline's IEP for 1998–99. Plaintiff argues that this claim nevertheless falls under the futility exception, because the failure of the State's administrative process to provide her with a decision for 23 months after she filed her notice of intent to seek a due process hearing suggests that further pursuit of relief before the SED would be in vain.

Because I am ordering that a decision be rendered on Jacqueline's 1998–99 IEP

within 10 days, I decline to find at this juncture that administrative recourse would be futile with respect to Plaintiff's claim against the School District. *See Murphy v. Arlington Central Sch. Dist. Bd. of Educ.*, No. 99 Civ. 9294, 1999 WL 1140872, *4 (S.D.N.Y. Dec.13, 1999) (declining to apply futility exception where SRO scheduled to render decision within seven days of Court's decision). But if no decision is reached within ten (10) business days, I *will* conclude that it would be futile for Plaintiff to wait any longer. The circumstances of this case are egregious: according to the deadline set by the parties, Alpert's decision was some nine months overdue by the time the Commissioner revoked her certification, and during that time, she brazenly ignored two orders from the Commissioner instructing her to issue an immediate decision. Moreover, although the Commissioner removed Alpert from the matter at the end of June of this year, to date, there has been no decision by a new IHO in Plaintiff's case. Thus, nearly one year has passed since Plaintiff was to have received a decision.

This Court is giving the Defendants one last chance. Like the *Murphy* Court, I will not "hesitate to adjudicate [Plaintiff's] claims" if an administrative determination is not forthcoming by August 28, 2000. *See Murphy*, 1999 WL 1140872 at *4; *Radcliffe v. School Bd. of Hillsborough County*, 38 F.Supp.2d 994, 1000 (M.D.Fla. 1999) (stating that exhaustion may be excused "[s]hould the state fail to comply with its obligations under IDEA to resolve the required administrative proceedings in a timely fashion").

(2) *Denial of Due Process under the IDEA by the State Education Department*

Plaintiff's second claim, which is asserted against the SED, is brought exclusively under § 1415 of the IDEA. This claim has been broken down into two separate elements: (1) the SED's procedural safeguards have proven inadequate *in Plain-tiff's case* for the State to meet its obligation under the IDEA to make certain that an IHO decision is issued in a timely fashion; and (2) the SED's procedures are inadequate for the State to meet that obligation on a *system-wide* basis. I address each of these contentions in turn.

(a) *Violations Specific to Plaintiff's Case*

Plaintiff first claims that the SED's failure to take effective action to ensure a timely decision constitutes a violation of the IDEA's due process requirements, and that the SED's procedures, as they apply to Jacqueline's case, are insufficient under § 1415 of the Act and the regulations governed by that provision. As to this aspect of the second cause of action, I grant summary judgment to Plaintiff.

█ The State argues that Plaintiff lacks Article III standing to bring this action. "At 'an irreducible constitutional minimum,' Article III standing requires (1) that the plaintiff have suffered an 'injury in fact,' i.e., an injury that is 'concrete and particularized' as well as 'actual or imminent,' rather than merely 'conjectural or hypothetical,'; (2) that there be a 'causal connection between the injury and the conduct complained of,' i.e., that the injury be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court;' and (3) that it be likely that the injury complained of would be 'redressed by a favorable decision.'" *St. Pierre v. Dyer*, 208 F.3d 394, 401 (2d Cir.2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The State contends that Plaintiff fails to meet the second of these elements because Plaintiff's election not to pursue a Section 310 appeal, rather than any act or omission on the SED's part, was the cause of her injury.

█ "Although 'standing has been denied because the injury seems *solely* at-

tributable to the plaintiff, [s]tanding is not defeated merely because the plaintiff in some sense contributed to his own injury. Standing is defeated only if it is so completely due to the plaintiff's own fault as to break the causal chain.'" *Id.* at 402 (quoting 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3531.5, at 457 (2d ed.1984)). The latter circumstance is not present in this case. The State does not controvert Plaintiff's contention that the SED *could* have acted more effectively to elicit a decision from the IHO. Instead, the State asserts that, because Plaintiff could have filed her own Section 310 appeal to compel a decision from the moment that Alpert's decision was overdue, Plaintiff's failure to do so amounts to a superseding cause that defeats Article III standing. Thus, even accepting the State's position that Plaintiff bore responsibility under the IDEA for ensuring that the Act's time limit was followed (which I do not), it remains undisputed that the State could have acted substantially sooner than it did to provide Plaintiff with a decision. Hence, the State was a direct contributor—even if not the only contributor—to Plaintiff's injury, namely, the denial of her due process right to a prompt decision under the IDEA. That is sufficient for Article III standing, and the State's argument fails. I therefore turn to the merits of Plaintiff's claim.

The detailed procedural provisions of the IDEA "lie at the heart" of the statute. *See Evans v. Bd. of Educ. of the Rhinebeck Cent. Sch. Dist.*, 930 F.Supp. 83, 93 (S.D.N.Y.1996). "The Act's procedural guarantees are not mere procedural hoops through which Congress wanted state and local educational agencies to jump. Rather, 'the formality of the Act's procedures is itself a safeguard against arbitrary or erroneous decisionmaking.'" *Id.* (citations omitted). Moreover, "[b]oth Congress and the Supreme Court place great importance on the procedural provisions incorporated into [IDEA] § 1415." *Id.* (citing *Bd. of Educ. of Hendrick Hudson Central School*

*v. Rowley*, 458 U.S. 176, 205, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) ("the importance Congress attached to these procedural safeguards cannot be gainsaid.")).

■ The procedures of § 1415 take on particular importance with respect to the issuance of timely administrative decisions. In *Murphy*, an IDEA case involving the failure of a SRO to decide an appeal within the statutory time frame, Judge Leisure acknowledged

> the importance of prompt decisions throughout the administrative review process as provided under the Act. The purpose of the Act is to provide a free appropriate public education for disabled children. By providing a host of procedural safeguards, Congress intended to promote that purpose, not to allow appeals to languish for months or, perhaps years, while the appropriateness of a child's educational placement remains in limbo. Congress demonstrated its awareness of the need for speedy decision-making at both the initial hearing and on appeal when it promulgated 34 C.F.R. § 300.511.

*Murphy v. Arlington Central Sch. Dist. Bd. of Educ.*, No. 99 Civ. 9294, 1999 WL 980164, *4 (S.D.N.Y. Oct.28, 1999). Noncompliance with the IDEA's time limit for issuance of IHO decisions may constitute a violation of due process rights as provided under the Act. *See, e.g., L.C. v. Utah State Bd. of Educ.*, 57 F.Supp.2d 1214, 1222–23 (D.Utah 1999).

■ The State does not dispute the centrality of compliance with the requirements of § 1415 in the statutory scheme. Rather, the State Defendants contend that they have satisfied those requirements by making available the Section 310 appeal procedure. They argue that Plaintiff could have pursued a Section 310 appeal in order to compel Alpert to issue a decision, and that the availability of that mechanism to Plaintiff constitutes adequate process under the IDEA. Thus, the State contends, Plaintiff cannot prevail on a claim for viola-

tion of due process under the IDEA when she opted not to utilize the Section 310 procedure open to her.

This argument ignores the IDEA's clear mandate that state and local agencies—not parents—bear responsibility for seeing that IHO decisions are rendered promptly. The IDEA's implementing regulations make this abundantly clear:

> § 300.511 Timelines and convenience of hearings and reviews.
>
> (a) The *public agency* shall ensure that not later than 45 days after the receipt of a request for a hearing—
>
> (1) A final decision is reached in the hearing; and
>
> (2) A copy of the decision is mailed to each of the parties.

34 C.F.R. § 300.511(a)(1)(2) (emphasis added). "Public agencies" within the meaning of the Department of Education regulations include state educational agencies, or "SEAs," such as the SED. *See* 34 C.F.R. § 300.500(a) ("Each SEA shall ensure that each public agency establishes, maintains, and implements procedural safeguards that meet the requirements of §§ 300.500–300.529.") Moreover, at least two other courts have recognized the impermissibility of transferring the onus of ensuring compliance with due process hearing deadlines from the public agency to the parent. In *Evans*, Judge Parker rejected as insufficient under the IDEA an SRO's "admonishment" to the School District to ensure that hearings are commenced promptly. *See Evans*, 930 F.Supp. at 94. Section 300.512(a) (now 300.511(a)), the Judge observed, "specifically sets forth that it is the District's duty, and not the parent's, to ensure that a timely hearing and decision takes place after the parent requests an impartial hearing of the IEP decision." *Id.*

Similarly, in *Zakary M. v. Chester County Intermediate Unit*, No. 95 Cv. 1842, 1995 WL 739708 (E.D.Pa. Dec. 6, 1995), the Court determined that a state hearing officer erred when he found that the plaintiff parents bore the obligation of seeing to it that their due process hearing was timely held. "[N]either the Act, its accompanying regulations, or relevant case law places such an obligation on the parents," the Court noted. *Id.* at *4. "In fact, the Act places the burden to conduct a timely hearing directly on the public agency." *Id.*

Viewed against these judicial pronouncements on the responsibilities of state agencies under the IDEA and the clear language of the Act's implementing regulations, the State's argument lacks merit. Simply making the Section 310 procedure available to parents is clearly insufficient for the State to meet its obligations under the Act. Rather, the statute obliges the State to see that IHOs comply with the 45–day rule. It does not permit them to delegate that responsibility to parents by forcing them to shoulder the burden of seeking orders from the Commissioner to compel the issuance of IHO decisions.

That leaves the question of whether the SED met that obligation in the present case. Forty-five days from Plaintiff's request for a due process hearing fell on November 2, 1998. It is true that Plaintiff repeatedly waived her right to a decision within 45 days of her request for an impartial hearing. In so doing, however, she did not agree to a waiver of any and all deadlines *in perpetuum*. An extension of the 45–day rule merely tolls that time limit; it does not waive it entirely. *See Andress v. Cleveland ISD*, 832 F.Supp. 1086, 1092 (E.D.Tex.1993). Here, the parties stipulated that Alpert would issue a decision within two weeks of her receipt of closing briefs. Thus, Plaintiff's waiver extended only to September 17, 1999. We are almost a year beyond that date.

■ The response of the SED and the School District to Alpert's continuing failure to comply with the parties' deadline consisted of the following: (1) the School District telephoned Alpert's office on several (unspecified as to how many) occa-

sions asking about the status of the decision; (2) on November 4, 1999, roughly a month and a half after Alpert's decision was due, the School District amended a pending complaint against Alpert under 8 N.Y.C.R.R. 220.21 to include her failure to issue a timely decision; (3) on January 25, 2000, nearly three months after the School District filed its amended complaint, the SED admonished Alpert for her failure to adhere to the parties' deadline and ordered her to issue a decision immediately; (4) on February 14, 2000, in response to Plaintiff's own 200.21 complaint dated January 31, 2000, Defendant Levay recommended that Plaintiff file a Section 310 appeal seeking an order from the Commissioner that Alpert issue an immediate decision; (5) on March 8, 2000, the School District sent Levay a letter informing her that Alpert as of that date had still not rendered a decision; Levay responded by letter dated March 28, 2000 recommending that the School District file a joint Section 310 appeal with Plaintiff; (6) on April 17, 2000, the School District sent Plaintiff a letter inquiring as to her willingness to join in such appeal; (7) on April 27, 2000, the School District filed a Section 310 appeal on its own, which was decided in a June 12, 2000 order from the Commissioner that Alpert issue a decision in 10 days; and (8) on June 28, 2000, after Alpert failed to do so, the Commissioner issued an order revoking Alpert's IHO certification.

These responses were insufficient for the SED to fulfill its responsibility to Plaintiff and Jacqueline under the IDEA. The SED took approximately three months to respond to the School District's 200.21 complaint. And even assuming *arguendo* that this passage of time could be deemed not to have violated Plaintiff's rights under the IDEA, I conclude, like Judge Parker in *Evans,* that an unenforceable "admonishment," such as the Commissioner issued to Alpert pursuant to 8 N.Y.C.R.R. 200.21, was inadequate for the SED to live up to its affirmative duty to *ensure* a timely decision from Alpert. The State's subsequent responses were similar-

ly deficient. In doing nothing more than advising Plaintiff and the School District to undertake an administrative appeal, the SED did precisely what 34 C.F.R. § 500.311(a) and the case law prohibit— i.e., reassigned the burden of ensuring a timely decision from itself to Plaintiff.

Finally, Plaintiff claims that the SED violated the IDEA's due process requirements by "denying [Plaintiff] notice of prior and pending complaints regarding the competence of the appointed hearing officer." (Am.Cplt.¶ 36.) Plaintiff appears to have abandoned this argument, as she has not addressed it in her Memorandum of Law in Opposition to Summary Judgment. In any event, she has not identified any provision in the IDEA or Department of Education regulations incorporating such a notice requirement into the Act's due process safeguards. This contention is therefore dismissed.

For the above reasons, Plaintiff is granted summary judgment, and her request for a declaratory judgment that the SED violated her and Jacqueline's due process rights under the IDEA is granted.

"The IDEA broadly authorizes a district court to 'grant such relief as the court determines is appropriate.'" *Muller v. Committee on Special Education of the East Islip Union Free Sch. Dist.,* 145 F.3d 95, 104 (2d Cir.1998) (quoting 20 U.S.C. § 1415(e)(2) (now § 1415(i)(2)(B)(iii)). Accordingly, I order the SED to ensure that an IHO renders a decision on Plaintiff's complaint regarding Jacqueline's 1998–99 IEP within 10 business days of this memorandum decision.

(b) *Systemic Violation*

Plaintiff also asks the Court for a judgment declaring that the State's administrative review procedures are generally inadequate, on a system-wide basis, to satisfy the State's obligations under the IDEA to see that IHO decisions are rendered in a timely fashion. Plaintiff has submitted affidavits from three parents who encoun-

tered administrative delays similar to those established by Plaintiff, as well as six decisions from the Commissioner under Section 310, with dates ranging from March to December 1999, ordering IHOs who had violated the 45–day rule to render immediate decisions.[2]

While I sympathize greatly with the frustration of these parents at what is, in their cases, an appalling administrative shortcoming, Plaintiff's evidence, which consists of a small number of procedural violations over the span of only nine months, is nowhere near sufficient to support the sweeping finding that she requests. Though it is clear that the State has failed to provide due process to Jacqueline under the IDEA, I cannot conclude on the record before me that the SED's procedural framework violates the statutory due process rights of *every* child in *every* IDEA due process hearing conducted before the SED. However, Plaintiff's claim of systemic failure is appropriately brought, and Plaintiff, as a party aggrieved by the SED's procedures, is a proper plaintiff to bring it if she wishes to do so as a class representative. Plaintiff has twenty (20) days to amend her complaint to assert class-wide claims if she wishes to do so. Assuming that she chooses to pursue her claims on behalf of a class, the Court will order expedited discovery and a swift adjudication of this issue of importance to thousands of children.

(3) *Tuition Reimbursement*

■ Plaintiff asks this Court to order the School District to reimburse her for tuition she has expended for Jacqueline's placement at the Kildonan School beginning in January 1999 and running through the pendency of this action. Under § 1415(e)(2) (now § 1415(i)(2)(B)(iii)), district courts have the power "to order school authorities to reimburse parents for

their expenditures on private special education for a child, if the court determines that such placement, rather than the school district's proposed IEP, is proper." *Muller*, 145 F.3d at 104. This determination requires a court to consider (1) whether the school district's placement pursuant to its IEP is inappropriate, and (2) whether the private placement desired by the parents is appropriate. *See id.* at 105.

The School District has moved to dismiss this claim for failure to exhaust administrative remedies. Technically, the District is correct. Under § 1415 of the IDEA, courts sit to review administrative decisions. Here, there is no decision to review. Moreover, neither party has provided the Court with any information on the antecedent questions of the appropriateness of the School District's IEP or Jacqueline's placement at Kildonan. Thus, I cannot make a determination on Plaintiff's claim.

However, I decline to dismiss this claim. If the IHO does not make a decision within ten days, each side has ten days to supplement the record with whatever information may be pertinent to Plaintiff's appeal and I will decide the matter in the first instance, on the ground that it would be futile to await further developments.

(4) *Defendants Mills and Levay—Procedural Due Process Violation*

■ Plaintiff's third claim is asserted solely under 42 U.S.C. § 1983 for violation of Plaintiff's and Jacqueline's right to procedural due process under the Fourteenth Amendment. It is well settled, however, that a plaintiff asserting a constitutionally based § 1983 claim for procedural violations of the IDEA must establish a constitutional violation "outside the scope of the IDEA." *See Evans*, 930 F.Supp. at 102–03 (citing *Bonar v. Ambach*, 771 F.2d 14, 18 (2d Cir.1985)). In other words, a plaintiff cannot prevail on a § 1983 claim for viola-

---

**2.** The case numbers of these decisions, which are attached to Plaintiff's Memorandum of Law in Opposition to Summary Judgment, are: 13,208; 14,060; 14,061; 14,145; 14,-211; and 14,240.

tion of procedural due process under the Fourteenth Amendment if the violations for which she seeks redress are actionable under the IDEA.

Here, Plaintiff has neither articulated nor established a denial of any process due to her that does not already fall within the ambit of § 1415 of the IDEA. Accordingly, her § 1983 claims against the individual Defendants must be dismissed. I therefore need not address the State Defendants' remaining arguments that Plaintiff's § 1983 claims are barred under the Eleventh Amendment and that Mills and Levay are qualifiedly immune.

### (5) *Attorneys' Fees*

■ Plaintiff also seeks an award of attorneys' fees under 20 U.S.C. § 1415(i)(3)(B), which provides:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parent of a child with a disability who is the prevailing party.

20 U.S.C. § 1415(i)(3)(B). Plaintiffs may be considered "prevailing parties" under this subsection if they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *See G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 81 (2d Cir.1999) (quoting *Texas State Teachers Assoc. v. Garland Independent Sch. Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). Additionally, an "action or proceeding" for which counsel fees are recoverable includes both administrative and judicial actions. *See Brown v. Griggsville Community Unit Sch. Dist. No. 4*, 12 F.3d 681, 684 (7th Cir.1993).

Here, Plaintiff has prevailed on her central claim by securing from this Court a declaration that her procedural rights under the IDEA were violated, and an order that the State provide her with a decision on Jacqueline's IEP in short order. Accordingly, Plaintiff is entitled to reimbursement from the State for attorneys' fees expended on SED administrative proceedings and this litigation.

### *Conclusion*

(1) Plaintiff's application for a declaratory judgment that the SED violated IDEA due process requirements as to Plaintiff and her daughter is granted, and the SED is hereby ordered to ensure that a decision is issued on Plaintiff's objection to Jacqueline's 1998–99 IEP within 10 days of this decision.

(2) Plaintiff's application for attorneys' fees in connection with the administrative proceedings below and this action is granted.

(3) Plaintiff's IDEA claim against the School District regarding the adequacy of Jacqueline's 1998–99 IEP and for tuition reimbursement, as well as the School District's motion for summary judgment on that claim, is held in abeyance.

(4) The State Defendants' motion for summary judgment is denied with respect to so much of Plaintiff's second claim as alleges a system-wide IDEA violation, and granted as to the entirety of Plaintiff's third claim.